BURNS ET AL. *v.* FORTSON, SECRETARY OF
STATE OF GEORGIA, ET AL.

No. 72–901.   Decided March 19, 1973

PER CURIAM.

By statute, Georgia registrars are required to close
their voter registration books 50 days prior to November
general elections, except for those persons who seek to
register to vote for President or Vice President.   Ga. Code
Ann. §§ 34–611 and 34–602.*   The District Court up-
held the registration cutoff against appellants' consti-
tutional attack based upon this Court's decision in *Dunn
v. Blumstein,* 405 U. S. 330 (1972).   This appeal followed.

The State offered extensive evidence to establish "the
need for a 50-day registration cut-off point, given the
vagaries and numerous requirements of the Georgia elec-
tion laws."   Plaintiffs introduced no evidence.   On the
basis of the record before it, the District Court concluded
that the State had demonstrated "that the 50-day period
is necessary to promote . . . the orderly, accurate, and
efficient administration of state and local elections, free

---

*Section 34–611 was enacted in 1964.   At present, Georgia has
no independent durational residency requirement.   The State's stat-
utory requirement of one year in the State and six months in the
county (see Ga. Code Ann. § 34–602) was held unconstitutional in
*Abbott* v. *Carter* (No. 15689, ND Ga. 1972).

from fraud." (Footnote omitted.) Although the 50-day registration period approaches the outer constitutional limits in this area, we affirm the judgment of the District Court. What was said today in *Marston* v. *Lewis, ante,* p. 679, at 681, is applicable here:

> "In the present case, we are confronted with a recent and amply justifiable legislative judgment that 50 days rather than 30 is necessary to promote the State's important interest in accurate voter lists. The Constitution is not so rigid that that determination and others like it may not stand."

The judgment of the District Court is

*Affirmed.*

MR. JUSTICE BLACKMUN, concurring in the result.

I concur only in the result, for I hesitate to join what, for me, is the Court's unnecessary observation that "the 50-day registration period approaches the outer constitutional limits in this area." I also concurred in the result in *Dunn* v. *Blumstein,* 405 U. S. 330 (1972), and said,

> "It is, of course, a matter of line drawing, as the Court concedes, *ante,* at 348. But if 30 days pass constitutional muster, what of 35 or 45 or 75? The resolution of these longer measures, less than those today struck down, the Court leaves, I suspect, to the future." *Id.,* at 363.

I am not prepared to intimate at this point that a period of time in excess of 50 days cannot be sustained, no matter how supportive the record may be. In *Blumstein,* the Court struck down Tennessee's 90-day county durational residency requirement in part, I suppose, because it exceeded the State's 30-day registration period. Had the latter been 60 days, rather than 30, I suspect the Court would have indicated approval of a corresponding 60-day

durational residency requirement. See 405 U. S., at 345–349. I feel that each case in this area should be decided on its own record unrestricted by an arbitrary number-of-days figure.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE BRENNAN concur, dissenting.

For the same reasons that I gave in *Marston* v. *Lewis, ante,* p. 682, I dissent from the affirmance of the judgment of the District Court. Unlike Arizona, Georgia does not use volunteer deputy registrars, a system that the Court in *Marston* thought created special problems warranting special treatment. Indeed, the State's expert witness in this case testified that there was something dangerous about using deputy registrars. Nor does Georgia have as late a primary as Arizona. As in *Marston,* appellees here did not show that it was impossible to increase the size of the registrars' staffs or the efficiency of their operations. Moreover, there was evidence that final lists of registered voters are not prepared until 14 days before the election, which indicates that there is no serious administrative impediment to keeping registration open for a relatively long period.

The Court also relies on an ingenious bootstrap argument that I cannot let pass without comment. The statutes in question in *Marston* were enacted last year after our decision in *Dunn* v. *Blumstein,* 405 U. S. 330 (1972). The Arizona Legislature therefore knew that its limitations on registration could only be justified by the administrative burdens faced by registrars. It knew that insuring the purity of the ballot box and guaranteeing the knowledgeability of voters were not goals that could be permissibly served by time limitations on registration. *Id.,* at 353–357. The Court in *Marston* thus correctly noted that the Arizona statutes reflected a recent judg-

ment that 50 days were necessary to avoid administrative problems.

In this case, the Court quotes that statement from *Marston*. The difficulty is that the Georgia statutes here were adopted nearly a decade ago. The legislative judgment is hardly a recent one. Nor was it made knowing that only administrative difficulties were a justification for durational residency requirements. Even if we would be inclined to defer to a recent and informed legislative determination of necessity, when there is no reason to believe that the legislature made such a determination, deference in that regard is uncalled for.

Finally, I believe it important to indicate my view that the decisions today provide no basis for making it more difficult to register by making shorter any existing registration periods, in the absence of compelling evidence of extraordinary new circumstances. If 30 days were all that some state officials needed yesterday, that is all they need today.