Jim **HINNANT**, Individually and as representative of the class of similarly situated residents of the State of Florida, Plaintiff,

v.

Jim **SEBESTA**, Supervisor of Elections, Hillsborough County, Florida, et al., Defendants.

Joel Francis **WOODMAN** et al., Plaintiffs,

v.

James **SEBESTA** et al., Defendants.

Nos. 72–440–Civ–T–H and 72–443–Civ–T–H.

United States District Court, M. D. Florida, Tampa Division.

Sept. 7, 1973.

Richard P. Condon, Tampa, Fla., for plaintiffs.

Jim Hinnant, pro se.

Robert Shevin, Atty. Gen., State of Florida, Tallahassee, Fla., for State defendants.

Michael J. O'Brien, Resident County Atty., Hillsborough County, Tampa, Fla., for defendant Jim Sebesta.

Before RONEY, Circuit Judge, and KRENTZMAN and HODGES, District Judges.

PER CURIAM:

These consolidated suits were filed on August 2 and 3, 1972, challenging the constitutionality of Florida Statute 97.-041, F.S.A. which requires a minimum durational residency of sixty days preceding the election as a prerequisite to voter registration. The Chief Judge of the Circuit was notified of the filing of the cases pursuant to 28 U.S.C.A. § 2281 et seq., but declined to convene a three-judge court. The District Judge then heard and determined the actions, finding the statute to be unconstitutional. Hinnant v. Sebesta, 346 F.Supp. 913 (M.D.Fla.1972). On appeal from that decision to the Fifth Circuit, the Court held that a three-judge court should have been constituted. It therefore vacated the decision of the single judge and remanded the case to the District Court. Fair and Hinnant v. Sebesta, 475 F.2d 1140 (5th Cir. 1973). Chief Judge Brown then convened this three-judge court and the case was reargued.

We find, as the single District Judge did initially, that the statute is unconstitutional on the authority of Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Since that time, however, the Supreme Court has rendered two additional decisions of pertinence to the issue. Marston v. Lewis, 410 U.S. 679, 93 S.Ct. 1211, 35 L.Ed.2d 627 (1973) and Burns v. Fortson, 410 U.S. 686, 93 S.Ct. 1209, 35 L.Ed.2d 633 (1973).

In *Marston* the Court approved an Arizona statute, and in *Burns* a Georgia statute, each of which established a fifty day durational residence requirement. In both cases, however, the length of the residence requirement coincided with the length of the period between closing of registration and the election. By contrast, the Florida book closing period, like that of Tennessee in Dunn v. Blumstein, is only thirty days preceding the election. Florida Statute 98.051(4), F.S.A. The crucial importance of this distinction is emphasized in both *Marston* and *Burns*. Where there is hard evidence, as there was in each of those cases, that a certain period of time is required between the end of registration and the holding of the election in order to certify the rolls and per-

form the many other administrative tasks necessary to conducting the election, the incidental result that prospective voters who become bona fide residents during that period are effectively denied an opportunity to register is not constitutionally impermissible.

In effect, when the durational residency requirement is a mere corollary of and/or coincident with a *reasonable* period of time before an election during which *all* registration is precluded, the state is able to justify the resulting limitation upon the electoral franchise (and the right to travel) due to its "compelling interest" in preparing for and conducting the election itself.

"Fixing a constitutionally acceptable period [for this purpose] is surely a matter of degree. It is sufficient to note here that 30 days appears to be an ample period of time for the State to complete whatever administrative tasks are necessary to prevent fraud —and a year, or three months too much." Dunn v. Blumstein, 405 U.S. at 348, 92 SCt. at 1006.

Where the line will be drawn by the Supreme Court in those circumstances is as yet unclear. In *Burns* the Court remarked that "the 50-day registration period approaches the outer constitutional limits in this area . . ." 93 S.Ct. at 1210. See also the concurring opinion of Mr. Justice Blackmun. *Ibid*

■ It is unnecessary for us to attempt to decide those limits in this case, however, since Florida has already determined, at least under its present statutory scheme, that 30 days is sufficient to accommodate its needs between the end of registration and election day; and the imposition of an additional 30-day period before book closing as a durational residency requirement is purely that—a durational residency requirement. As such "it must be separately tested by the stringent standard." (Dunn v. Blumstein, 405 U.S. at 344, 92 S.Ct. at 1004), and it fails to pass that test both factually and legally. There is no evidence whatever that Florida officials routinely or systematically investigate the bona fides of a registrant's claim of residence and, as a result the following passage from Dunn v. Blumstein is especially apropos (405 U.S. at 346–347, 92 S.Ct. at 1005) :

"The qualifications of the would-be voter in Tennessee are determined when he registers to vote, which he may do until 30 days before the election. Tenn.Code Ann. § 2–304. His qualifications— including bona fide residence —are established then by oath. Tenn.Code Ann. § 2–309. There is no indication in the record that Tennessee routinely goes behind the would-be voter's oath to determine his qualifications. Since false swearing is no obstacle to one intent on fraud, the existence of burdensome voting qualifications like durational residence requirements cannot prevent corrupt nonresidents from fraudulently registering and voting. As long as the State relies on the oath-swearing system to establish qualifications, a durational residence requirement adds nothing to a simple residence requirement in the effort to stop fraud. The nonresident intent on committing election fraud will as quickly and effectively swear that he has been a resident for the requisite period of time as he would swear that he was simply a resident. Indeed, the durational residence requirement becomes an effective voting obstacle only to residents who tell the truth and have no fraudulent purposes.

"Moreover, to the extent that the State makes an enforcement effort after the oath is sworn, it is not clear what role the durational residence requirement could play · in protecting against fraud. The State closes the registration books 30 days before an election to give officials an opportunity to prepare for the election. Before the books close, anyone may register who claims that he will meet the durational residence requirement at the time of the next election. Although Tennessee argues that this 30-day pe-

riod between registration and election does not give the State enough time to verify this claim of bona fide residence, we do not see the relevance of that position to this case. As long as the State permits registration up to 30 days before an election, a lengthy durational residence requirement does not increase the amount of time the State has in which to carry out an investigation into the sworn claim by the would-be voter that he is in fact a resident."

The sixty day durational residency requirement contained in Florida Statute 97.041, F.S.A., is hereby declared to be unconstitutional.