**Hubert J. SMITH et al.**

**v.**

**Winfield DUNN, Governor, State of Tennessee, et al.**

**No. 74–254–NA–CV.**

United States District Court,
M. D. Tennessee,
Nashville Division.

July 29, 1974.

Robert H. Polk, Nashville, Tenn., for plaintiffs.

Robert H. Roberts, Advocate Gen., Nashville, Tenn., for defendants.

Before PHILLIPS, Chief Circuit Judge, GRAY, Chief District Judge, and MORTON, District Judge.

MORTON, District Judge:

A provision of the Tennessee Election Code has the effect, in certain situations, of requiring persons under disability of blindness to reveal their vote to two election judges[1] in order to receive assistance in marking their ballots at elections. The question presented in this case is whether this state requirement denies blind persons rights protected by the Fourteenth and Fifteenth Amendments to the United States Constitution.

Plaintiffs, individually and as authorized committee members of the organizations they represent, are qualified voters of the State of Tennessee and are persons under the disability of blindness of varying degrees. Defendants are the Governor of Tennessee, Attorney General of Tennessee, and various election officials of the State. Suit is brought under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, with jurisdiction being conferred by 28 U.S.C. § 1343(3), (4) and 28 U.S.C. § 2201. Since plaintiffs seek to enjoin the operation and enforcement of a state statute, a three-judge court has been convened pursuant to 28 U.S.C. §§ 2281, 2284.

Prior to January 15, 1973, T.C.A. § 2–1226 provided that persons blind or otherwise physically disabled could receive voting assistance as follows:

*"Assistance to physically disabled voters.*—Any voter who declares to the officer holding the election that by reason of blindness or other physical disability he is unable to mark his ballot, and who, in the judgment of the officer, is so disabled, shall be permitted, upon the request of the voter, to have his ballot marked *by any reputable person of the voter's selection."* (Emphasis supplied)

This statute was repealed by a comprehensive election law enacted by the 1972 Tennessee legislature, and effective January 15, 1973, T.C.A. § 2–716 prescribes assistance to disabled or illiterate voters in the following manner:

"A voter who declares that by reason of blindness or other physical disability or illiteracy he is unable to mark his ballot to cast his vote as he wishes and who, in the judgment of the officer of elections, is so disabled or illiterate, may:

(a) Where voting machines are used,

(1) Use a paper ballot, or

(2) If he cannot mark a paper ballot as he wishes, have his ballot marked on a voting machine by his spouse, father, mother, brother, sister, son or daughter or by one (1) of the judges of his choice in the presence of either a judge of a different political party or, if such judge is not available, an election official of a different political party; or

(b) Where voting machines are not used, have his ballot marked by his spouse, father, mother, brother, sister, son or daughter or by one (1) of the judges of his choice in the presence of either a judge of a different political party or, if such judge is not available, an election official of a different political party.

---

1. An election official whose title and duties are detailed in the Election Code.

The officer of elections shall keep a record of each such declaration, including the name of the voter and of the person marking the ballot and, if marked by a judge, the name of the judge or other official in whose presence the ballot was marked. The record shall be certified and kept with the poll books on forms to be provided by the coordinator of elections. [Acts 1972 (Adj.S.), ch. 740, § 1.]"

■ Plaintiffs attack the constitutionality of the requirement that voters under disability of blindness who request assistance must, absent being accompanied to the polls by one of the designated relatives, choose an election judge to mark the voter's ballot in the presence of a second election judge or official. Plaintiffs claim that this procedure, which compels them to divulge their vote to persons not of their own choice, violates their right to vote by secret ballot and denies them equal protection of Tennessee law. In addition to seeking to have T.C.A. § 2–716 declared unconstitutional and its operation and enforcement enjoined, plaintiffs also urge the court to reinstate T.C.A. § 2–1226, thereby permitting assistance by "any reputable person of the voter's selection." While the court may find the former provision preferable, nevertheless, regulation of the election process is, within constitutional boundaries hereinafter explored, a purely legislative function. It might be further added that were we to invalidate the current law, Tennessee would be left without a law requiring voter assistance. Should this occur, the blind as well as persons otherwise physically disabled or illiterate might possibly be deprived of their opportunity to vote in elections close at hand.

■ A long line of Supreme Court decisions has established that the right of suffrage, in both state and federal elections, is a fundamental right protected by the Constitution and exercisable on an equal basis by all qualified citizens within a jurisdiction. Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); Ex parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274 (1884). The elective franchise was early described as a "fundamental political right, because preservative of all rights." Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220 (1886). More recently the Court has characterized "[t]he right to vote freely for the candidate of one's choice . . . [as] the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." Reynolds v. Sims, *supra,* 377 U.S. at 555, 84 S.Ct. at 1378.

■ Equally clear, however, is the broad power of states to regulate the elective process, and to impose standards which do not unjustly discriminate. Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); Lassiter v. Northampton County Bd. of El., 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959); Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904). Thus, while the right to vote is constitutionally protected, it is nevertheless " . . . within the jurisdiction of the state itself, to be exercised as the state may direct, and upon such terms as to it may seem proper, provided, of course, no discrimination is made between individuals, in violation of the Federal Constitution." Pope v. Williams, *supra,* 193 U.S. at 632, 24 S.Ct. at 575.

The statute under attack in this case does not impose state regulations which disfranchise a segment of the citizenry, nor does it erect barriers which make the exercise of suffrage more difficult for a particular group. To the contrary, the challenged statute was designed to afford persons blind, otherwise physically disabled, or illiterate an opportunity to exercise the franchise while attempting to minimize the incidence of fraudulent voting practices on the part of those lending assistance. In striving to insure

"purity of the ballot box," however, plaintiffs argue that their right to a secret ballot has been infringed, and their right to participate on a non-discriminatory basis with other voters has been denied.

 Secrecy in voting has been called " . . . one of the fundamental civil liberties upon which a democracy must rely most heavily in order for it to survive." United States v. Executive Committee, 254 F.Supp. 543, 546 (N.D.Ala. 1966). However, the right to vote in secret is nowhere expressly mentioned in the Federal Constitution nor in the Tennessee Constitution. Article 4, § 4 of the Tennessee Constitution provides only that all elections, except those within the General Assembly, "shall be by ballot." The Tennessee Supreme Court, however, has recognized the right to a secret vote by interpreting "ballot" as "designating a method of conducting elections that will guarantee the secrecy and integrity of the ballot." Mooney v. Phillips, 173 Tenn. 398, 118 S.W.2d 224, 226 (1938).[2] We, therefore, need not reach the question of whether there exists a Federal right to voting secrecy for, even assuming arguendo that no such right exists, it still remains that once the right to secret balloting has been made a part of the voting franchise granted by the State, that right may not be withdrawn in ways inconsistent with the equal protection clause of the Fourteenth Amendment. Cf. Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

The effect of the legislation in question is to establish two classifications of citizens with respect to voting secrecy. The first class, composed of qualified voters who are able to accomplish the mechanical process of voting, is afforded absolute secrecy. The second class, composed of those physically unable or mentally unable to mark a ballot without assistance, is subjected to a limited intrusion into their right of voting secrecy in order to insure that the voter's selection is accurately recorded on the ballot.

 In deciding the constitutionality of this distinction it is, of course, accepted that under the Fourteenth Amendment States need not treat all classes of persons identically. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L. Ed.2d 225 (1971); Carrington v. Rash, supra; Manson v. Edwards, 482 F.2d 1076 (6th Cir. 1973). The validity of state classifications under the equal protection clause is assessed with reference to one of two established standards of review. The traditional standard, or "rational basis test," "requires that a state classification be upheld unless there is no rational relationship between the classification imposed by the state and the state's reasonable goals." Robinson v. Board of Regents, 475 F.2d 707, 710 (6th Cir. 1973). In applying this standard courts recognize that "[l]egislatures are presumed to have acted constitutionally . . . and their statutory classifications will be set aside only if no grounds can be conceived to justify them." McDonald v. Board of Election, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969).

The second and more recent standard, the compelling state interest test, calls for a stricter standard of review where a classification, such as race, is inherently "suspect," or where a fundamental right of the complaining class is at stake. Under this standard a state must go beyond merely showing that its classification has a rational basis and establish that it is justified by a compelling state need. Among the fundamental interests calling for stricter scrutiny are the right to vote, Dunn v. Blumstein, supra; the right to interstate travel, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1960); and

2. Mooney upheld the constitutionality of legislation providing for use of voting machines, a part of which required that approved machines "must insure voting in absolute secrecy." The current statutes respecting voting machines, T.C.A. §§ 2–901 to 2–915, contain a like requirement.

the right to procreate, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

In choosing the appropriate standard in the instant case, we conclude that the statute under review must be upheld if it can be justified under the rational basis standard of equal protection review. Certainly we do not find the classification of blind persons for voting purposes to be "suspect," and while the right to vote is clearly fundamental, in the circumstances of this case we view the interest of blind persons to do so secretly to be of lesser magnitude.

Unless a state provides means to enable the blind to accomplish the mechanical steps of voting for themselves, and such an obligation on the part of the state is not asserted here, some form of assistance must be offered less the blind be deprived of voting altogether.[3] Tennessee has an obvious and legitimate concern with the manner in which the blind are assisted in marking their ballots at elections. As previously mentioned, in times past Tennessee permitted the blind, along with other disabled persons, to have their ballots marked by any "reputable person" of their choice. Plaintiffs have no quarrel with that limited invasion of their voting secrecy, and further, do not appear to oppose the challenged statute's option for the blind to have their ballots marked by one of the designated family members (spouse, father, mother, brother, sister, son or daughter). Rather, it is the new provision that, absent assistance from one of the specified relatives, the blind must receive assistance from one election judge while in the presence of a second of different political affiliation that is assailed as too great an intrusion into plaintiffs' right to a secret vote.

The State justifies the new legislation as being a reasonable regulation enacted to secure the freedom of elections and the purity of the ballot box. Fears voiced in support of the more stringent control of disabled voter assistance relate to the possibility, particularly ripe in the case of the blind or illiterate, that those rendering assistance will not mark the voter's ballot in the way instructed. The State's goal is to preserve the integrity of the election process, and, along with the Tennessee legislature, we have no doubt that loosely supervised voter assistance can open the door to fraudulent voting practices. Whether the potential for voting fraud is sufficiently great to demand the restrictions challenged here is a legislative, not judicial function. Grounds can certainly be conceived to justify the State's fears in this regard, and we are unable to conclude that the statute in question is not rationally related to the State's goal of election integrity.

We further find that, except as relevant in the context of the foregoing discussion, the Fifteenth Amendment has no application in the case at bar.

For these reasons, we hold that T.C.A. § 2-716 is constitutional and that this case must be dismissed. An appropriate order shall be entered.

PHILLIPS, Chief Circuit Judge, concurs in the opinion.

GRAY, Chief District Judge, concurs in the result only.

---

3. Although the right of blind persons to ballot-marking assistance is not in issue here, under the Voting Rights Act of 1965, states have been held to have a duty of providing assistance to persons incapable of performing the mechanics of casting their vote. See, e. g., Puerto Rican Organization for Political Action v. Kusper, 350 F.Supp. 606 (N.D.Ill.1972) ; Garza v. Smith, 320 F.Supp. 131 (W.D.Tex.1970) ; United States v. State of Louisiana, 265 F.Supp. 703 (E.D.La. 1966).