Jimmy F. BEARE et al., Plaintiff-
Appellee,

v.

Dolph BRISCOE, Governor of Texas,
et al., Defendants-Appellants.

No. 71–1924.

United States Court of Appeals,
Fifth Circuit.

July 31, 1974.

W. O. Shultz, II, Asst. Atty. Gen. of
Tex., Crawford C. Martin, Atty. Gen. of
Tex., Austin, Tex., Franklin Smith,
Nueces County Atty., Nueces County,
Edwin Prichard, Asst. County Atty.,
Corpus Christi, Tex., James C. McCoy,
Asst. Atty. Gen. of Tex., Austin, Tex.,
for defendant-appellant.

David Yancey White, Edwards & De
Anda, William Edwards, Corpus Christi,
Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and
AINSWORTH and RONEY, Circuit
Judges.

PER CURIAM:

█ This appeal is one of the rela-
tively rare situations in which the Court
of Appeals is required to review the de-
cision of a three-judge District Court.[1]

---

1. In the typical three-judge case the appeal
is carried directly to the Supreme Court be-
cause the District Court has either granted
or denied preliminary or permanent injunc-
tive relief. Goldstein v. Cox, 1970, 396 U.S.
471, 90 S.Ct. 671, 24 L.Ed.2d 663. Here the
District Court granted declaratory relief, but
withheld the injunction in order that the

The District Court held that the Texas constitutional [2] and statutory [3] provisions which established a system of annual voter registration during a specified time imposed an impermissible burden on the right to vote in violation of the Fourteenth Amendment's guaranty of equal protection of the laws.[4] The Court's opinion was a very comprehensive one which gave a complete picture of the problem therefore eliminating the necessity of much detail here. Concluding that the statutory provisions requiring annual voter registration during a restricted four-month period served no justifiable state interest, we affirm the decision of the District Court.

The three-judge District Court after declaring unconstitutional the challenged laws insofar as they provided for annual voter registration, withheld issuance of an injunction and retained jurisdiction of the cause in order to "afford the Texas Legislature the full opportunity to correct what we have found and held to be constitutional deficiencies in the present system." 321 F.Supp. at 1109. In an effort to correct the objectionable features of the law, the Legislature thereafter enacted a temporary statute [5] inaugurating permanent voter registration, with provisions for the automatic re-registration of those voting within a

Texas Legislature might have the opportunity to implement a substitute system of voter registration.

Because the District Court expressly reserved the issuance of an injunction, there was no order appealable under 28 U.S.C.A. § 1291, and with the case thus only partially determined, the declaratory judgment did not dispose of the whole case. Consequently, under Garza v. Smith, 5 Cir., 1971, 450 F.2d 790, there was no appealable order in the absence of a permissive interlocutory appeal under 28 U.S.C.A. § 1292(b). To permit this to be done we remanded the case to the District Court which then, adhering to its opinion, certified the case to the Court of Appeals as an interlocutory appeal. By order of this Court the interlocutory appeal was allowed so the case is properly before this Court.

Since the Texas Legislature has subsequently accepted the judicial invitation to change the law, the issuance of a formal injunction has been rendered unnecessary and undesirable. The only viable issue which remains involves the correctness of the declaratory judgment.

2. Article VI, Section 2 of the Texas Constitution, Vernon's Ann.St. in its relevant provisions provides:

"Every person subject to none of the foregoing disqualifications who shall have attained the age of twenty-one (21) years and who shall be a citizen of the United States and who shall have resided in this State one (1) year next preceding an election and the last six (6) months within the district or county in which such person offers to vote, shall be deemed a qualified elector; provided, however, that before offering to vote at an election a voter shall have registered annually, *but such requirement for registration shall not be*

*considered a qualification of an elector* within the meaning of the term 'qualified elector' as used in any other Article of this Constitution in respect to any matter except qualification and .eligibility to vote at an election. * * * " (Emphasis added).

3. Article 5.11a, V.A.T.S. Election Code provided:

"Voters shall register annually. * * * In each year * * * the period for registration shall be from the first day of October through the thirty-first day of January following. * * * Each annual registration * * * shall entitle the registrant, if otherwise qualified, to vote at elections held during the period of one year beginning on the first day of March following the registration period."

4. Beare v. Smith, S.D.Tex., 1971, 321 F. Supp. 1100.

The disposition of the District Court on equal protection grounds makes it unnecessary to consider the alternative argument that on the facts of this case, annual voter registration is a substantive equivalent of a poll tax and thus conflicts with the due process clause of the Fourteenth Amendment and the Twenty-Fourth Amendment as well. See United States v. Texas, W.D.Tex., 1966, 252 F.Supp. 234, aff'd 384 U.S. 155, 86 S.Ct. 1383, 16 L.Ed.2d 434.

5. Ordinarily amendatory legislative action of this sort would terminate the controversy and require that the case be dismissed as moot. Hall v. Beals, 1969, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214. However, since the Texas Legislature has adopted the rather unusual procedural alternative of conditioning the permanency of the new law upon the finality of the judgment of this case (which it cited in the statute), we have con-

succeeding three-year period,[6] and extended the time period for registration beyond the former cutoff date of January 31.[7]

Since the District Court's decision, the Supreme Court has considered several cases involving state deadlines for enrollment to vote. In Dunn v. Blumstein, 1972, 405 U.S. 330, 92 S.Ct. 995, 31 L. Ed.2d 274, the Court struck down Tennessee's durational voter residency requirement of one year in the state and three months in the county on the grounds that the time period was excessive and did not promote any compelling governmental interest. In analyzing the statute, the Court emphasized that "a heavy burden of justification is on the State, and that the statute will be closely scrutinized in light of its asserted purposes." 405 U.S. at 343, 92 S.Ct. at 1003, 31 L.Ed.2d at 284. Tennessee failed to define any state interest which would justify the total disenfranchisement of those persons who have been residents in the state less than a year or residents of the county less than three months before the election. The Court pointed out that a year or even three months was too long since the state did not close its registration books until 30 days before an election. Therefore, the state was admitting that the 30-day period between registration and the election was sufficient for officials to prepare for the election.

■ One year later the Court acknowledged that sufficient state interest could be shown to allow a 50-day residency and registration requirement without being violative of equal protection. Marston v. Lewis, 1973, 410 U.S. 679, 93 S.Ct. 1211, 35 L.Ed.2d 627; Burns v. Fortson, 1973, 410 U.S. 686, 93 S.Ct. 1209, 35 L.Ed.2d 633. Both Arizona and Georgia had statutes providing

---

cluded that the controversy is still very much alive. Laws, 62d Leg., Reg.Sess. ch. 827 § 23 (1971).

6. The following amendments changed the provisions for annual voter registration.

   Art. 5.11a Period for registration; period for which registration is effective

   * * * * *

   Subdivision 2. The first voting year under this law begins on March 1, 1972. An initial registration period under this law begins on October 1, 1971, and continues through January 31, 1972. Notwithstanding the provisions of Section 42a of this code, a person may register at any time during this period if he has already attained the qualifications required by Section 42a or will attain them before April 1, 1972. A registration during this period becomes effective on March 1, 1972, and continues in effect for the 1972, 1973, and 1974 voting years, subject to extension or renewal as provided in Section 50b of this code. On applications mailed to the registrar on or before January 31 but not received by the registrar until after that date, the registrar shall treat each application as having been made in accordance with Subdivision 3 of this section, with registration to become effective on the 31st day following its receipt.

   Art. 5.18b. Extension or renewal of registration by voting or by request for renewal; cancellation for failure to renew

   Subdivision 1. Beginning with the elections held during the 1972 voting year, whenever a registered voter votes in a primary or general election for nomination or election of State and county officers, his registration is automatically extended or renewed for the succeeding three voting years unless, prior to the beginning of the first succeeding year, the registration is cancelled under some provision of this code.

7. The period for registration was modified by the amendment to Art. 5.11a.

   Art. 5.11a Period for registration; period for which registration is effective.

   * * * * * * *

   Subdivision 3. Beginning on February 1 after the close of the registration period provided for in Subdivision 2 of this section, registration shall be conducted at all times that the registrar's office is open for business. A registration on or after that date becomes effective on the 31st day following and is effective for the voting year in which that date falls and the succeeding two voting years, except that a registration on or after the first day of October and more than 30 days before the end of the voting year is effective for the remainder of that voting year and for the succeeding three voting years. Each registration is subject to extension or renewal as provided in Section 50b of this code. A person is deemed to have registered on the date that his application is received by the registrar.

for a 50-day durational voter residency requirement and a 50-day voter registration requirement. In upholding the constitutionality of these statutes, the Court found no conflict with its decision in Dunn v. Blumstein, *supra.*

"States have valid and sufficient interests in providing for *some* period of time—prior to an election—in order to prepare adequate voter records and protect its electoral processes from possible frauds. A year, or even three months, was found too long, particularly in the context of 'the judgment of the Tennessee lawmakers,' who had set 'the cut off point for registration [at] 30 days before an election . . . .' 405 U.S. at 349, 92 S.Ct. at 1006, 31 L.Ed.2d at 274. The Arizona scheme, however, stands in a different light. The durational residency requirement is only 50 days, and not a year, or even three months. Moreover, unlike Tennessee's, the Arizona requirement is tied to the closing of the state's registration process at 50 days prior to elections and reflects the state legislative judgment that the period is necessary to achieve the state's legitimate goals."

410 U.S. at 680, 93 S.Ct. at 1212, 35 L. Ed.2d at 629. Therefore, when compelling state interests are shown, a minimal cutoff date for registration will be allowed.

The Court's most recent decision, Rosario v. Rockefeller, 1973, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1, dealt with the New York Election Law which required enrollment in a political party at least 30 days prior to the November general election in order to be eligible to vote in the party's primary election the following year. Clearly there was an extensive period between the cutoff date for enrollment under the statute and the primary, eight months prior to the presidential primary, held in June, and 11

months prior to the non-presidential primary. The Court acknowledged the excessive length of the period but found that it was "not an arbitrary time limit unconnected to any important state goal." 410 U.S. at 760, 93 S.Ct. at 1254, 36 L.Ed.2d at 8. The state's interest in protected party primaries from "raiding" justified the time limitation on enrollment. Furthermore, the Court suggested that the disenfranchisement of the appellants resulted not from the state statute, but rather from the voluntary decision of the appellants not to register within the prescribed time. The Court's opinion suggests that what might otherwise be invidious discrimination is excused by ascribing fault to the victims and an overriding justification by the state.

█ As the District Court found in our case, the State of Texas did not show a compelling state interest which would justify the disenfranchisement of such a large number of otherwise qualified voters. The evidentiary record below establishes that an entire class, otherwise willing to register, are unable to do so as the direct result of the challenged laws. It cannot be ascribed as a voluntary choice on their part since the statistical evidence clearly showed that the Texas laws rendered it impossible for a substantial percentage of otherwise qualified voters to register.

We acknowledge the state's right to impose some reasonable cutoff point for registration, but the Texas Legislature itself has recognized that a 28-day period is sufficient for the certification of voter lists prior to the holding of an election.[8]

In our decision we in no way diminish the right of the State of Texas to prescribe the qualifications for its voters, nor do we hold that all voter registration procedures are constitutionally in-

8. Art. 5.19a List of registered voters
    (1) Before the first day of March each year, the registrar shall prepare for each election precinct of the county a certified list of registered voters who, as of the 31st day before March 1 (as of January 31, 1972, for the list prepared in 1972), are entitled to registration for the voting year in which March 1 falls.

firm which disenfranchise a minority that fails to register. What we have held is that the tactic underlying the Texas annual voter registration system, which sought to win the war for representative government by inflicting devastating losses on its electoral army before it ever marched off to the polls, is inconsistent with the United States Constitution. The mass disenfranchisement may have been unintentional, but it was nevertheless the consequence of the law. The judgment of the District Court declaring unconstitutional the statutory provisions prescribing limited registration time periods and the requirement for annual voter registration was correct. The effect of this is to leave intact the 1971 amendments. See notes 6 and 7, supra.

Affirmed.