Jacqueline SELPH et al., Plaintiffs,

v.

The COUNCIL OF the CITY OF LOS ANGELES et al., Defendants.

No. CV 74–48–DWW.

United States District Court,
C. D. California.

Feb. 13, 1975.

Kindel & Anderson, Mason H. Rose, V, Douglas B. Davidson, William J. Goines, Los Angeles, Cal., for plaintiffs.

Burt Pines, City Atty., Claude E. Hilker, Asst. City Atty., Jerome Montgomery, Daniel U. Smith, Deputy City Attys., Los Angeles, Cal., for defendants.

## MEMORANDUM

DAVID W. WILLIAMS, District Judge.

This is a civil rights class action in which the plaintiffs seek to enjoin election officials of the City of Los Angeles from locating polling places in structures containing what the plaintiffs term architectural barriers. The nominal plaintiffs are Jacqueline Selph, who in 1971 received personal injuries which rendered her a paraplegic and resulted in her permanent confinement to a wheelchair; Easter Seal Society for Crippled Children and Adults of Los Angeles County; California Association of the Physically Handicapped, Inc., and California Paralyzed Veterans Association. The City Council of Los Angeles was eliminated as a defendant as not being a "person" within the meaning of 42 U.S.C. § 1983, but the individual members of the City Council remain as defendants as well as those city officials who are responsible for planning and conducting municipal elections in Los Angeles.

The plaintiffs have identified as a class those residents of the City of Los Angeles who are registered voters and who have physical disabilities or who are so advanced in age that their mobility is limited, and who wished to vote in the past, or who wish to vote in future municipal elections; who allege that they were denied the right to vote in person at their assigned polling place because of the location and/or architectural design of their respective polling places such as would deny them physical access to a voting booth.

At the trial the evidence dealt mainly with wheelchair occupants and there was no evidence that addressed itself to the problem of persons who by reason of age or infirmity encountered difficulty entering polling places which have steps or are situated in hillside areas. This opinion therefore shall attempt only to explore the problems of wheelchair occupants.

On May 29, 1973, Los Angeles held a general municipal election to elect a mayor and other officials. On that day Miss Selph, a qualified elector, traveled unassisted to her polling place and learned for the first time that she could not wheel herself inside because the privately-owned residential structure was constructed two steps above the ground. Election officials offered to physically carry her over the steps but plaintiff declined this offer for the reason that she feared they might drop her, causing further personal injury, and for the additional reason that she felt that such an assisted entry would expose her to undue public attention and humiliation. Plaintiff was then offered the right to cast her ballot in the City Clerk's Office in the City Hall or to send her representative to City Hall to obtain a ballot to be cast by her and returned to the City Clerk's Office, but she declined both these offers.

Defendants contend that the criteria for selecting polling places is rational, and neither intentionally or unintentionally discriminates against plaintiff or any member of the class; that wheelchair occupants are not denied the right to vote; that if their assigned polling places do not have level access the disabled person may vote by the alternative procedure of casting an absentee ballot or he may personally vote on Election Day by casting a ballot in the Office of the City Clerk.

Plaintiffs presented considerable evidence supporting what they characterized as the "stigma" attached to being handicapped. Architectural barriers in the form of steps make many public and private buildings inaccessible to disabled persons. Obtaining a suitable residence or apartment may involve modifications such as ramping or widening of doorways which many landlords find objectionable. Travel and transportation are

very difficult problems for the disabled. Buses are almost always totally inaccessible due to their basic design and construction, and even if the wheelchair occupants can gain access, there is no place to secure the chair. Similar observations can be made about trains and taxicabs. Travel by aircraft is discouraged by most carriers and even if allowed presents problems of entry and exit. Unramped hotels with narrow doors present further problems for the disabled traveler. Attendance at theatres is usually an impossibility because fire laws prohibit blocking of aisleways, and the construction of public school buildings causes handicapped children to have to travel long distances to attend special schools built for the disabled. The handicapped adult who is able to perform work skills finds that few employers are willing to overcome problems of accessibility or modify furniture and equipment in order to accommodate this class of employee.

Plaintiffs do not contend that the physically handicapped are totally denied the franchise because they are unable to enter the polls. Rather they allege that the options available to them are inadequate. The absentee ballot is not considered an acceptable substitute because, (a) it does not allow the chance to obtain last minute information about candidates and issues, and (b) it is unavailable unless requested at least five days prior to the date of election which eliminates its use when the disabled person does not discover the inaccessibility of his polling place until Election Day.

Defendants point out that they must provide some 3800 polling places in order to cover the entire City of Los Angeles, and that while they give high priority to soliciting public buildings, there are not enough of these available. At the present time, approximately 65% of all polling places must be in residences to comply with the requirement that polls must be placed as near as possible to the electorate they serve. Defendants further insist that most residences are built above the ground to protect against termites and fungus and that at least two steps are required to reach the floor level. While approximately 100 polling places are located in residential garages, this has proven to be a great problem because the doors must remain open at all times, inadequate interior lighting hampers the work of the staff, and members of the Election Board are generally reluctant to spend up to 18 hours on Election Day working where no heat or toilet facilities are available.

Plaintiffs present a strong argument to support their contention that many voters either change their minds as to the manner in which they will vote on candidates and issues in the two or three days preceding Election Day or wait until that period to seriously concentrate on the ballot decisions they must make. Mervin Field, the Director of the California Poll, testified that in his 28 years experience researching voter behavior studies and attitudes, he has found that voters make up their minds late in the campaign season except as to major races. Moreover, in elections involving local races and propositions, most voter decisions are reached in the closing days of the campaign. He and another expert witness with experience in managing candidates' campaigns agreed that good strategy calls for spending the greater portion of the advertising budget in the week preceding Election Day for maximum media benefits. This media saturation produces a crescendo of public interest which stimulates discussion of candidates and issues among the voters and often results in last minute changes of mind. Plaintiffs contend that to give disabled persons no better alternative than to vote by absentee ballot is to deprive them of the advantage of the better informed decision that could be made by casting the vote personally on Election Day.

In this case of first impression, the question is whether the location of polling places in these residential and public structures containing architectural barriers is a denial of the handicapped person's right to vote under the Equal Protection Clause of the Fourteenth Amendment, and if so, which Equal Protection

test to apply. Dunn v. Blumstein, 405 U.S. 330, 335, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

■ A handicapped person has a constitutional right to vote, but he has no right to insist that city officials modify all polling places within the city so as to eliminate architectural barriers. The cost of undertaking such a project would be an unfair expenditure of huge amounts of money in order to benefit a small segment of the total population even assuming the city had the ability or right to modify privately-owned structures. Moreover, plaintiffs' demands would call for the modification of many polling places in precincts in which no disabled persons lives.

■ Plaintiffs assert that the failure on the part of defendants to provide polling places accessible to disabled persons amounts to a denial of the right to vote on Election Day, and that such denial calls for the application of the strict scrutiny or compelling state interest test. However, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review. McDonald v. Board of Election COM of Chicago, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); Bullock v. Carter, 405 U.S. 134, 143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). In McDonald, the Court found that the Illinois Absentee Balloting Statute did not violate the Equal Protection Clause by failing to provide coverage for pre-trial jail inmates while including voters unable to go to the polls because of physical incapacity. The Court stated that "there is nothing in the record to indicate that the Illinois statutory scheme has an impact on appellants' ability to exercise the fundamental right to vote. It is thus not the right to vote that is at stake here, but a claimed right to receive absentee ballots. Despite appellants' claim to the contrary, the absentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny appellants the exercise of the franchise." McDonald, 394 U.S. at 807, 89 S.Ct. at 1408.

In finding that there was no denial of the franchise, the Court felt that the strict scrutiny test was not applicable and that the traditional standard of a rational relationship to a legitimate state end was a sufficient test. Applying this standard, the Court stated that "a Legislature traditionally has been allowed to take reform 'one step at a time,' addressing itself to the phase of the problem which seems most acute to the legislative mind . . . and a Legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise to cover every evil that might conceivably have been attacked." McDonald, 394 U.S. at 809, 84 S.Ct. at 1409.

■ In the case at bar the City Council has provided the mechanism of the absentee ballot in an attempt to provide a satisfactory solution to the problems faced by disabled persons in voting. While this solution may not be the ideal as envisioned by plaintiff and her class, it is an attempt at reform and does assure plaintiffs of the right to vote. This approach can be seen as a rational alternative to the legitimate state purpose of minimizing the high cost and substantial administrative effort involved in providing more than 3800 accessible polling places.

■ The Equal Protection guarantee requires that all persons be treated alike under like circumstances and conditions, both in privileges conferred and in the liabilities imposed. Hartford Steam Boiler Inspection and Ins. Co. v. Harrison, 301 U.S. 459, 57 S.Ct. 838, 81 L.Ed. 1223 (1937).

"A physically incapacitated voter has no more basis to challenge a voting requirement of personal appearance than a blind voter can complain that the ballot is not printed in braille. Nor is it the province of a Court to weigh the relative ease or difficulty with which the state could accommodate its voting procedures to meet the ends of various handicapped voters. These are policy questions to be resolved by legislators." Whalen v.

Heimann, 373 F.Supp. 353, 357 (D. Conn.1974).

The Equal Protection Clause permits some burdens upon the right to vote or upon the right to vote in a manner equal with other voters. In Smith v. Dunn, 381 F.Supp. 822 (N.D.Tenn. 1974) the Court held that there was no violation of a blind person's Fourteenth Amendment right to a secret ballot by providing that, absent assistance from certain specified relatives, the blind must receive assistance from one election judge while in the presence of a second election judge of a different political affiliation. Marston v. Lewis, 410 U.S. 679, 93 S.Ct. 1211, 35 L.Ed.2d 627 (1973) and Burns v. Fortson, 410 U.S. 686, 93 S.Ct. 1209, 35 L.Ed.2d 633 (1973) upheld the right of a state to deny the vote to a person who takes up residence in a district less than 50 days prior to the election. In Rosario v. Rockefeller, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973) the Court upheld denial of the right to vote for persons who failed to comply with the New York Election Law requiring one to register eight months in advance of the election. These cases indicate that the Fourteenth Amendment permits some burdens upon the right to vote or upon the right to vote in a manner equal with other voters. It forbids conduct which results in a total denial of the right to vote on the basis of a class distinction or requirement, or when classes of voters are treated differently. Whereas here, the right is not totally denied and there are reasonable alternatives provided to the person who finds that his polling place is inaccessible to him, the traditional standard of a rational relationship to a legitimate state objective is proper to follow. San Antonio Independent School District v. Rodriquez, 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

This Court has found that the Constitution does not compel the defendants to modify all its 3800 polling places as requested by the plaintiffs, but some modifications to accommodate the handicapped would seem highly desirable.

Plaintiffs point out that their condition parallels such previously defined "suspect classifications" as race and sex in that these classifications arise for reasons outside the individual's control and cannot be changed by any effort on his part. It may well be that at some future date, a sufficient showing will be made to include the handicapped as a suspect classification.

Regardless of the outcome of subsequent cases, it is important that governmental agencies be at the forefront in the effort to minimize the difficulties faced by the handicapped. It is the mark of an enlightened society that it is sympathetic and cognizant of the needs and desires of the often overlooked members of society such as the aged and the handicapped.

During the trial, several suggestions were offered short of modifying all 3800 polling places. It was suggested that several centrally located, accessible polling places be established for use by the handicapped. Another suggestion involved changing the law which forbids the removal of voting materials from the polling place to allow the handicapped to vote outside if access is physically barred. Another possible solution might involve the absentee ballot, which instead of being returned by mail, might be handed to the election official at the handicapped person's polling place on the day of the election.

All these suggestions would involve a minimal expenditure of public funds, while insuring that the disabled person has access to all last minute information. These suggestions are not intended to be exhaustive or to be put forward as the only practical solution. They are intended only to show that reasonable alternatives are available at a minimal amount of effort and expenditure. The Los Angeles City Council would be well advised to give early consideration to the problems dealt with in this case. It is, however, a legislative matter at this point, and not a task for the Courts.

Judgment is ordered entered for the defendant.