928 F.2d 646
 59 USLW 2608
 Thomas M. HOFFMAN; Timothy David Ulrich, Plaintiffs-Appellants,
v.
STATE OF MARYLAND; Maryland State Administrative Board of
Election Laws; Margarette E. Crowder; Solomon N. Hoke;
Barbara B. Kendall; Peggy Rae Pavlat; James W. Johnson,
Jr., as members of the Board; Baltimore City Board of
Supervisors of Elections; Marvin L. Cheatham; Lionel
Murphy; Carl M. Adair, Board of Supervisors of Elections
for Baltimore City, Defendants-Appellees.
 No. 90-2665.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 6, 1990.
Decided March 22, 1991.
 
 John H. Morris, Vanable, Baetjer and Howard, argued (Michael H. Davis, Mitchell Y. Mirviss, Charles G. Byrd, Jr., Gregory A. Cross, Venable, Baetjer and Howard, Kathleen McDermott, Weinberg and Green, Allan Loucks, Smith, Somerville & Case and Susan Goering, American Civ. Liberties Union of Md., on brief), Baltimore, Md., for plaintiffs-appellants.
 Jack Schwartz, Asst. Atty. Gen., argued (J. Joseph Curran, Jr., Atty. Gen., Andrew H. Baida, Asst. Atty. Gen., on brief), Baltimore, Md., for defendants-appellees.
 Before WIDENER and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 WIDENER, Circuit Judge:
 
 
 1
 This case is a constitutional challenge to Maryland's voter purge statute. The statute requires that registered voters who have not voted in the last five years be removed from the rolls by cancellation of their registration. At the time this action was filed, Thomas Hoffman and Timothy David Ulrich, the appellants, were among those voters to be removed from the rolls because they had not voted in the last five years. They filed suit in the district court challenging the constitutionality of this state law. The district court found that the statute did not "offend the constitutional rights of plaintiffs to vote, or not to vote, or equal protection principles, or the exercise of plaintiff's rights of free speech." 736 F.Supp. 83 (1990). On appeal, Hoffman and Ulrich contend that Maryland's five-year purge statute violates the First and Fourteenth Amendments by restricting their right not to vote, infringes on equal protection principles and burdens their right of free speech. We are not persuaded by these arguments and affirm.
 
 
 2
 Hoffman and Ulrich have not voted since November 6, 1984. Under Md.Ann.Code Art. 33, Sec. 3-20, a registered voter who does not cast a vote in a primary, general or special election for a five year period is subject to mandatory removal from the voter registration rolls.* A notice of the impending action is sent to the last known address of each voter to be removed. The voter is then given the opportunity to show that the records are incorrect and that the voter did vote in at least one election in the previous five years. In keeping with this law, both plaintiffs advise that they have been removed from the rolls.
 
 
 3
 Hoffman and Ulrich argue that their constitutional right to vote also encompasses a right not to vote and to have the non-vote recorded. The district court equated the right to have one's non-vote recorded to the right we recognized in Dixon v. Maryland State Administrative Election Laws, 878 F.2d 776, 782 (4th Cir.1989), of having the total number of write-in votes in an election announced. It stated, "[t]he right not to vote--and to have one's non-vote recorded--must be viewed in the same light. In that context, the right to vote includes the right not to vote." We need not and do not decide the correctness of the comparison because, even if there is a right not to vote of constitutional significance, it is not infringed upon by Maryland's purge statute. Hoffman and Ulrich can choose not to vote regardless of whether they are listed on the voter registration rolls. So any right not to vote has not been infringed.
 
 
 4
 They continue the argument, however, that they want to be recorded as parties who are registered to vote but did not cast a ballot. This action of being registered but not voting, they claim, expresses their discontent with the candidates because the State announces the number of voters registered to vote but who did not. The argument goes that such announcement indicates their dissatisfaction and implicates the right to free speech. We now address that claim.
 
 
 5
 Plaintiffs seek to compare their position with that of the plaintiffs in Dixon where we held that the right to have write-in votes counted without the payment of a fee was constitutionally protected because its failure would undermine the right to vote. The protection apparently arose from the First Amendment. Dixon, 878 F.2d at 782. Thus, Hoffman and Ulrich argue, to the extent the choice not to vote is announced, it could convey a message of dissatisfaction with the candidates in a given election. Assuming for argument that such a First Amendment right exists, a question we do not decide, the act of not voting when registered involves, at the very least, both speech and non-speech. When both such "elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968).
 
 
 6
 Where both elements are involved, a regulation is
 
 
 7
 sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.
 
 
 8
 O'Brien, 391 U.S. at 377, 88 S.Ct. at 1679. The Court has since commented on the O'Brien test stating that in the last analysis it is "little, if any, different from the standard applied to time, place, or manner restrictions." Clark v. Community for Creative Nonviolence, 468 U.S. 288, 298, 104 S.Ct. 3065, 3071, 82 L.Ed.2d 221 (1984). As a result, " 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." Renton v. Playtime Theaters, Inc., 475 U.S. 41, 47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986). Accordingly, we apply that standard.
 
 
 9
 Here, there is no doubt that the Maryland statute is content-neutral. Hoffman and Ulrich do not even argue that the statute is being applied as a result of the message presented. The statute in question here is designed to curb vote fraud. It removes from the registered voter list those who have moved without notifying the voter registration board, those who have died when the city has not been notified of such deaths, and those who have become disqualified as a result of conviction for infamous crime if the city did not receive notice of such convictions. Without removing the names, there exists the very real danger that impostors will claim to be someone on the list and vote in their places. And the absent voting statutes open the door for vote fraud by this means. Accordingly, keeping accurate, reliable and up-to-date voter registration lists is an important state interest. See Marston v. Lewis, 410 U.S. 679, 681, 93 S.Ct. 1211, 1212, 35 L.Ed.2d 627 (1973); Burns v. Fortson, 410 U.S. 686, 686-87, 93 S.Ct. 1209, 1209-10, 35 L.Ed.2d 633 (1973). Finally, the statute does not unreasonably limit alternate avenues of communication. There is not a suggestion that the statute blocks other means of communicating the same dissatisfaction with the candidates. Even within the framework of the statute, nothing prevents the affected party from re-registering and then choosing not to vote to express, as claimed here, his views as to the inadequacy of the candidates. Even considering that re-registration may be somewhat burdensome, it is a small price to pay for the prevention of vote fraud. See Rosario v. Rockefeller, 410 U.S. 752, 761, 93 S.Ct. 1245, 1251, 36 L.Ed.2d 1 (1973).
 
 
 10
 Hoffman and Ulrich also argue that the statute violates equal protection principles. We do not agree. Although the statute does distinguish between those who vote and those who do not, Hoffman and Ulrich have not demonstrated that they, as a result of being non-voters, are members of a suspect class. Having determined that they have had no right infringed under a First Amendment analysis, we need not conduct a separate inquiry under a fundamental rights analysis of equal protection. See Dixon v. Maryland State Administrative Election Laws, 878 F.2d 776, 780 (4th Cir.1989). We are thus of opinion that the Maryland statute does not violate the constitutional requirement of equal protection of the laws.
 
 
 11
 The judgment of the district court is accordingly
 
 
 12
 AFFIRMED.
 
 
 
 *
 The text of this section provides:
 If a registered voter has been registered but has not voted at least once at a primary, general or special election within the five preceding calendar years, it shall be the duty of the board, unless cause to the contrary be shown, to cause the registration of that voter to be canceled....
 Md.Ann.Code Art. 33, Sec. 3-20.