**The PEOPLE of the State of Colorado, Plaintiff–Appellant, Cross–Appellee,**

**v.**

**Edward ONESIMO ROMERO, Defendant–Appellee, Cross–Appellant.**

**No. 85SA319.**

Supreme Court of Colorado, En Banc.

Nov. 30, 1987.

Rehearing Denied Dec. 21, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Eric Perryman, Asst. Atty. Gen., Denver, for plaintiff-appellant, cross-appellee.

Richard E. Young, Frank D. Plunkett, Jr., Denver, for defendant-appellee, cross-appellant.

ERICKSON, Justice.

The defendant, Edward Onesimo Romero, was charged with voting in the wrong precinct, a misdemeanor, section 1-13-709, 1B C.R.S. (1980), and four felony counts of providing false information regarding his residence, section 1-2-225, 1B C.R.S. (1980). The district court dismissed all charges, finding that the statute of limitations had run on the misdemeanor charge, and that the felony statute was unconstitutional as applied to the defendant because it deprived him of equal protection of the laws under article II, section 25 of the Colorado Constitution. The prosecution appealed the district court ruling. We reverse and remand the case to the district court with directions to reinstate the charges.

I.

On July 13, 1982, the defendant registered to vote in the City and County of Denver, listing his residential address as 2755 West 23rd Avenue. When he voted on September 14, 1982 and June 21, 1983, however, the defendant allegedly resided at an address located within a different precinct. In December 1984, the Attorney General filed an information charging the defendant with two felony counts of voting in an election by providing false information about his place of residence and one misdemeanor count of voting in a precinct in which he was not qualified to vote.

At a preliminary hearing in Denver County Court on counts one, two, and three, the testimony of the defendant, given in a related civil proceeding conducted on June 24, 1984, was admitted into evidence. The prosecution established probable cause and the case was bound over to the district court. On March 18, 1985, the Attorney General submitted a motion to file additional counts, which was granted. The fourth and fifth counts charged the defendant with voting in elections on November 2, 1982 and May 17, 1983, by providing false information regarding his place of residence. Prior to the preliminary hearing on the fourth and fifth counts, the defendant moved to prohibit the admission of his testimony given at the prior civil proceeding relying upon the privilege afforded by article VII, section 9 of the Colorado Constitution. The district court agreed with the defendant and suppressed the testimony. Nevertheless, the district court found that the prosecution established probable cause for both of the felony counts.

The defendant then filed a motion to dismiss the felony counts arguing that section 1-2-225, 1B C.R.S. (1980), a felony, was unconstitutional as applied to him because it proscribed conduct substantially similar to conduct prohibited by section 1-13-709, 1B C.R.S. (1980), a misdemeanor, yet imposed a more severe penalty. The district court agreed and dismissed each of the felony counts with prejudice. On its own motion, the district court dismissed the

misdemeanor charge, finding that section 1–13–709, though denominated as a misdemeanor, grants the rights and carries the penalties of a petty offense and therefore must be prosecuted within the six-month statute of limitations for petty offenses. Because the prosecution filed the information well beyond the six-month period, the district court dismissed the misdemeanor count.

As grounds for appeal, the prosecution claims: (1) section 1–2–225 does not deny the defendant equal protection of the laws; (2) the district court improperly applied the six-month statute of limitations for petty offenses; and (3) the district court improperly applied article VII, section 9 of the Colorado Constitution to exclude evidence of testimony given in a civil proceeding.[1] We agree. Accordingly, we reverse the district court and remand with instructions to reinstate the charges.

## II.

The defendant contends that section 1–2–225, 1B C.R.S. (1980), violates equal protection of the laws by proscribing identical conduct as that in section 1–13–709, 1B C.R.S. (1980), which imposes a lesser penalty.[2] Section 1–2–225 provides:

Any person who votes by knowingly giving false information regarding his place of present residence commits a class 5 felony and shall be punished as provided in section 18–1–105, C.R.S. 1973.

Section 1–13–709 provides:

Any person who, at any election provided by law, knowingly votes or offers to vote in any election precinct in which he is not qualified to vote is guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not more than two hundred dollars or by imprisonment in the county jail for not more than three months.

Equal protection of the laws is guaranteed by the fourteenth amendment of the United States Constitution and by the due process clause in article II, section 25 of the Colorado Constitution. *People v. Oliver*, 745 P.2d 222, 227 (Colo.1987). Equal protection of the laws assures that those who are similarly situated will be afforded similar treatment. *People v. Mozee*, 723 P.2d 117, 126 (Colo.1986); *People v. Calvaresi*, 188 Colo. 277, 281, 534 P.2d 316, 318 (1975). "When two criminal statutes prescribe different penalties for identical conduct, a defendant convicted and sentenced

---

1. The defendant filed a cross-appeal asserting that the trial court erred in concluding that article VII, section 9 of the Colorado Constitution does not prohibit the prosecution of the defendant under the facts of this case. A criminal defendant's right of appeal is found in section 16–12–101, 8 C.R.S. (1978): "Every person convicted of an offense under the statutes of this state has the right of appeal to review the proceedings resulting in conviction." Because the defendant was not convicted, he may not appeal. Moreover, initial jurisdiction over defendants' appeals from final judgment of the district court is conferred on the court of appeals, not the supreme court. § 13–4–106, 6 C.R.S. (1973 & 1986 Supp.). Accordingly, we dismiss the cross-appeal of the defendant.

2. Where legislation does not involve an intrinsically suspect classification or a fundamental right, the test is whether the classification is founded on a rational basis. *People v. Brown*, 632 P.2d 1025, 1027 (Colo.1981); *People v. Benjamin*, 197 Colo. 188, 190, 591 P.2d 89, 91 (1979). The United States Supreme Court has recognized that the right to vote is a fundamental right that is "preservative of other basic civil and political rights." *Reynolds v. Sims*, 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506

(1964). The United States Supreme Court has nevertheless acknowledged that states, because of their inherent constitutional authority to control the electoral process, can require persons to meet certain reasonable requirements before they can vote in state or national elections. *See, e.g., Burns v. Forston*, 410 U.S. 686, 93 S.Ct. 1209, 35 L.Ed.2d 633 (1973) (Court upheld residency and citizenship requirements); *Martson v. Lewis*, 410 U.S. 679, 93 S.Ct. 1211, 35 L.Ed.2d 627 (1973) (same). Under Colorado law "restrictions on the franchise, classifications based upon residency, citizenship or age have never been considered suspect." *Millis v. Board of County Comm'rs of Larimer County*, 626 P.2d 652, 657 (Colo.1981) (citing *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978); *Kramer v. Union Free School Dist. No. 15*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Skafte v. Rorex*, 191 Colo. 399, 553 P.2d 830, *appeal dismissed*, 430 U.S. 961, 97 S.Ct. 1638, 52 L.Ed.2d 352 (1976)) (footnote omitted). Because the issue of whether the statutes involved in this case unconstitutionally restrict the right to vote was not raised on appeal, we do not address it.

under the harsher statute is denied equal protection of the laws." *Oliver,* 745 P.2d at 227 (quoting, *Mozee,* 723 P.2d at 126). If, however, there are reasonable distinctions between the statutes, equal protection is not offended. *People v. Westrum,* 624 P.2d 1302, 1303 (Colo.1981).

While criminal legislation is not invalidated simply because a particular act may violate more than one statutory provision, *People v. Taggart,* 621 P.2d 1375, 1382 (Colo.1981), "equal protection of the laws requires that statutory classifications of crimes be based on differences that are real in fact and reasonably related to the general purposes of criminal legislation," *People v. Mumaugh,* 644 P.2d 299, 301 (Colo.1982); *see People v. Brown,* 632 P.2d 1025 (Colo.1981). The General Assembly may, however, prescribe more severe penalties for acts it perceives to have graver consequences, even if the differences are only a matter of degree. *Mozee,* 723 P.2d at 126; *People v. Haymaker,* 716 P.2d 110, 116 (Colo.1986).

### A.

The equal protection clause is implicated only where two statutes that apply different criminal sanctions proscribe the same conduct. *People v. Czajkowski,* 193 Colo. 352, 356, 568 P.2d 23, 25 (1977). A facial examination of the two statutes reveals that the General Assembly did not proscribe the same conduct: A defendant violates section 1-2-225 when he actually votes by providing false information regarding his present residence; section 1-13-709 proscribes one from voting or offering to vote in a precinct in which he is not qualified to vote. To be qualified to vote one must: (1) be eighteen years old at the time of the election; (2) be a citizen of the United States; and (3) have resided in Colorado and the precinct in which he is registered to vote for thirty-two days immediately preceding the election. § 1-2-101(1), 1B C.R.S. (1980). A voter may therefore violate section 1-13-709 without violating section 1-2-225. One may knowingly offer

to vote in a precinct where he is not qualified to vote, but never actually vote. Section 1-13-709 is also violated when, not having reached the age of eighteen, a voter votes or offers to vote, when one not a citizen of the United States votes or offers to vote, and when one votes or offers to vote when he has not resided in the precinct in which he is registered to vote for thirty-two days immediately preceding the election. The misdemeanor statute, section 1-13-709, is a broader, more general, provision which proscribes conduct other than that enumerated in the felony statute, section 1-2-225.

On the other hand, a voter may violate section 1-2-225 by knowingly providing false information regarding his current address and voting in an election precinct in which he is otherwise qualified to vote. If a person knowingly provides false information about his place of residence, but the fabricated residence is located within the precinct in which he has resided for the thirty-two days immediately preceding the election, the voter violates the felony statute without violating the misdemeanor. We are satisfied that the conduct proscribed by the two statutes is sufficiently distinguishable to withstand a challenge of facial unconstitutionality.

### B.

The defendant claims that, as applied to him, section 1-2-225 violates equal protection of the law by proscribing exactly the same conduct as section 1-13-709. We disagree. In order to vote in any "primary, general or congressional vacancy election" one must properly register. § 1-2-201(1), 1B C.R.S. (1980). Section 1-2-225 prohibits, *inter alia,* a voter from enabling himself to vote by knowingly providing false information about his place of present residence. A voter provides information about his residence when he registers to vote, sections 1-2-203(1), (2)(a), (b), (3)(a), (b), 1B C.R.S. (1980 & 1986 Supp.), 1-2-204, 1B C.R.S. (1980),[3] and when he votes by sign-

3. Section 1-2-203(1)(a) provides:

> The county clerk and recorder shall ask each qualified elector making application for regis-

ing a signature card on election day, section 1–7–107(1)(a), 1B C.R.S. (1980).[4] The conduct of the defendant that formed the basis of the felony counts was providing false information about his residence when he registered to vote, and then reaffirming the false information on election day by listing the false address on the signature card and signing it.

In the misdemeanor statute, section 1–13–709, the General Assembly sought to foreclose voters from knowingly voting or offering to vote in precincts where they are not qualified. The defendant could only vote or offer to vote on election day; he could not do so when he registered to vote. When the defendant voted, after providing false information as to his residence, he violated an element of the felony statute, but not an element of the misdemeanor. As applied to the defendant, the statutes do not proscribe identical conduct. "A statute is generally presumed constitutional ... and the burden is on the party challenging the statute to prove its unconstitutionality beyond a reasonable doubt." *Kibler v. State,* 718 P.2d 531, 534 (Colo.1986) (citations omitted). We are not convinced that the distinction between providing false information when one registers to vote and then reaffirming that information on election day, and voting or offering to vote in a precinct where he is not qualified, is insufficient to pass constitutional muster. When the General Assembly imposes harsher penalties for conduct it legitimately perceives to be of greater social conse-

---

tration and said elector shall answer the following:
    (a) Whether the elector intends to claim his present address as his sole legal place of residence and, in so doing, to abandon claim to any other legal residence.
Section 1–2–203(2)(b) provides that the elector seeking to register to vote shall be asked and shall answer the following:
The elector's place of residence, including municipality, which, if urban or suburban, shall be described by its street number or, if there is no street number, by the description of the lot in the block in the addition, division, or subdivision into which the land upon which the residence is located is divided; in all other cases, the residence shall be described by the section or subdivision thereof in the township and range as established and numbered by the United States government survey. If the place of residence is an apartment house, rooming house, dormitory, hotel, or motel, the number of the floor and the number of the apartment or room shall also be given. A post office box number shall not be used as a place of residence for the purposes of this subsection (2).
Section 1–2–203(3) provides:
    (a) If the county clerk and recorder has reasonable cause to believe that an applicant has falsified any answers to the questions set forth in this section, he shall certify the same to the district attorney for investigation and appropriate action.
    (b) If the elector states that his present address is his sole legal residence and that he claims no other place as his legal residence and if he meets the qualifications of section 1–2–101, the county clerk and recorder shall proceed to register the elector.
Section 1–2–204 provides:
    (1) The registration sheet to be signed by the elector shall bear the following statement:

"WARNING:
IT IS A CRIME:
To swear or affirm falsely as to your qualifications to register to vote."
    (2) Each elector making application for registration shall take the following oath: "I, ____, do solemnly swear (or affirm) that I am a citizen of the United States and that on the date of the next ensuing election I shall have attained the age of eighteen years and shall have resided in the state of Colorado at least thirty-two days and in precinct no. ____ at least thirty-two days before the election. I further swear (or affirm) that the present address I listed herein is my sole legal place of residence and that I claim no other place as my legal residence."
    (3) The county clerk and recorder is hereby authorized to administer the oath prescribed in subsection (2) of this section.
    (4) The elector shall sign the registration sheet as evidence of the oath administered to him for himself or on behalf of a member of his family whom he is registering.

4. Section 1–7–107(1)(a) provides:
    Any registered elector desiring to vote shall write his name and address on a form available at the polling place and give this form to one of the receiving judges of election, who shall thereupon announce the same in a loud and distinct tone of voice, clearly and audibly. If the registered elector is unable to write, he may request assistance from one of the judges of election, and such judge shall sign the form and witness the registered elector's mark. The form to be available will be in substance: "I, ____, who reside at ____, am a registered elector of this precinct and desire to vote at this ____ election. Date ____."

quence, this court will defer to the judgment of the legislature. *People v. Czajkowski*, 193 Colo. 352, 356–57, 568 P.2d 23, 25–26 (1977). Where, as here, a reasonable distinction can be drawn between the conduct proscribed by two statutes, the legislation is not constitutionally infirm. Accordingly, we find that section 1–2–225 does not violate the equal protection clause of the Colorado Constitution.

### III.

■ The prosecution also contends that the district court improperly applied the six-month statute of limitations for petty offenses to the misdemeanor defined by section 1–13–709, 1B C.R.S. (1980). The district court compared the penalties imposed by section 1–13–709 with the penalties listed under section 18–1–107, 8 C.R.S. (1982)[5] for petty offenses and section 16–10–109(1), 8 C.R.S. (1980),[6] and determined that although denominated a misdemeanor, violation of section 1–13–709 is a petty offense in terms of the penalty imposed. The penalty for the misdemeanor of voting in the wrong precinct is a fine of not more than two-hundred dollars or imprisonment in county jail for not more than three months. § 1–13–709. This falls within the range of penalties provided in section 18–1–106 for class 3 misdemeanors because it exceeds the minimum sentence of a fifty-dollar fine, yet it is less than the maximum sentence of six-month imprisonment, seven-hundred-and-fifty-dollar fine, or both.

The legislature alone is vested with the power to define crimes and prescribe punishment. *People v. Montgomery*, 669 P.2d 1387, 1390 (Colo.1983); *People v. Trujillo*,

631 P.2d 146, 148 (Colo.1981). We will uphold such legislation unless it is clear beyond a reasonable doubt that the legislative act violates constitutional standards. *Montgomery*, 669 P.2d at 1390. Although a judge has broad discretion in tailoring a sentence to accommodate various factors, the sentence must be consistent with legislatively imposed limits and constraints. *People ex rel. Gallagher v. District Court*, 632 P.2d 1009, 1011 (Colo.1981); *see also Trujillo*, 631 P.2d at 148 (courts lack jurisdiction to impose sentences outside of the minimum and maximum terms specified by statute); *People v. Hinchman*, 196 Colo. 526, 530–31, 589 P.2d 917, 919 (1978) (same). Section 1–13–709, voting in the wrong precinct, is an unclassified misdemeanor. When a state statute defines a felony, misdemeanor, or petty offense without specification of its class, the offense should be punishable as provided in the statute defining it. § 18–1–108, 8 C.R.S. (1982). The statute defines a violation of section 1–13–709 as a misdemeanor, not a petty offense. Accordingly, the applicable statute of limitations is not six months, but eighteen months. § 16–5–401, 8 C.R.S. (1982). Because the prosecution filed the misdemeanor information within eighteen months, the charge should be reinstated.

### IV.

■ The prosecution argues that the district court improperly applied Article VII, section 9 of the Colorado Constitution by excluding testimony given in the civil suit. Article VII, section 9 of the Colorado Constitution, provides:

---

5. Section 18–1–107, 8B C.R.S. (1982), provides:

A violation of a statute of this state is a "petty offense" if specifically classified as a class 1 or class 2 petty offense. The penalty for commission of a class 1 petty offense, upon conviction, is a fine of not more than five hundred dollars, or imprisonment for not more than six months other than in the correctional facilities at Canon City, or both. The penalty for commission of a class 2 petty offense is a fine specified in the section defining the offense. The penalty assessment procedure of section 16–2–201, C.R.S., is available for the payment of fines in class 2 petty offense cases.

6. Section 16–10–109(1), 8 C.R.S. (1980), provides:

For the purposes of this section, "petty offense" means any crime or offense classified as a petty offense or, if not so classified, which is punishable by imprisonment other than in a correction facility for not more than six months, or by a fine of not more than five hundred dollars, or by both such imprisonment and fine, and includes any violation of a municipal ordinance or offense which was not considered a crime at common law; except that violation of a municipal traffic ordinance which does not constitute a criminal offense shall not constitute a petty offense.

In trials of contested elections, and for offenses arising under the election law, no person shall be permitted to withhold his testimony on the ground that it may criminate himself, or subject him to public infamy; but such testimony shall not be used against him in any judicial proceeding except for perjury in giving such testimony.

In 1983, the defendant petitioned the district court to require that he be certified as a candidate for the state senate on the primary election ballot. At a civil proceeding on June 17, 1983, the defendant testified that he did not reside at 2755 West 23rd Avenue. *See Romero v. Sandavol,* 685 P.2d 772 (Colo.1984). The defendant claims that because this civil proceeding involved an "election contest," under article VII, section 9, his testimony could not be used against him in any judicial proceeding because it would contravene the constitutional mandate of securing the purity of elections. *See* Colo. Const. art. VII, § 11. Where, as here, the defendant places his residence at issue by voluntarily testifying at a civil proceeding that he instigated, the purity of elections is not threatened by admitting his testimony at a later proceeding.

The defendant further contends that "one of the grounds for an election contest is that the candidate 'is not eligible to the office to which he has been declared elected'" (citing section 1–11–201(1)(a), 1B C.R. S. (1980)). We disagree with the defendant. In construing a statute, our primary task is to ascertain and give effect to the intent of the General Assembly. *People v. Guenther,* 740 P.2d 971, 975 (Colo.1987). "To discern that intent, we look first to the language of the statute itself, giving the statutory terms their commonly accepted and understood meaning." *Id.* (citing *Binkley v. People,* 716 P.2d 1111, 1113–14 (Colo.1986): *People v. District Court,* 713 P.2d 918, 921 (Colo.1986): *Engelbrecht v. Hartford Accident & Indemnity Co.,* 680 P.2d 231, 233 (Colo.1984)). Section 1–11–201(1)(a), 1B C.R.S. (1980) reads:

The election of any person *declared duly elected* to any office may be contested:

(a) When the contestee is not eligible to the office to which he has been declared elected.

Because the defendant was not "declared duly elected" to an office he cannot claim that, under section 1–11–201(1)(a), the June 23, 1983 civil proceeding did not involve an "election contest." To contest an election, one is limited to the statutorily enumerated causes, sections 1–11–201(1)(a) to –201(1)(e), giving rise to such an action. *See Lewis v. Boynton,* 25 Colo. 486, 55 P. 732 (1898). The defendant has not established any of the grounds for an election contest, and is therefore precluded from claiming protection under article VII, section 9 of the Colorado Constitution. Accordingly, the testimony at the civil proceeding should not have been suppressed in the criminal proceeding that followed.

We reverse and remand to the district court with directions to reinstate the charges.

LOHR, J., concurs in part and dissents in part.

ROVIRA and KIRSHBAUM, JJ., join in the concurrence and dissent.

LOHR, Justice, concurring in part and dissenting in part:

I concur in parts III and IV of the majority opinion. I respectfully dissent, however, from part II of that opinion, in which the majority holds that the trial court erred in dismissing the four felony counts charging the defendant with voting by knowingly giving false information regarding his place of present residence in violation of section 1–2–225, 1B C.R.S. (1980). I agree with the trial court that as applied to the facts that form the basis of the charges in this case, section 1–2–225 proscribes conduct that is identical to that prohibited by section 1–13–709, 1B C.R.S. (1980), a misdemeanor statute which prescribes a lesser penalty. As a result, the defendant's constitutional right to equal protection of the laws precludes his conviction of the four felony charges.

In order to violate section 1–2–225, the felony statute at issue here, a person must

vote by knowingly giving false information regarding his place of present residence. It is a violation of the misdemeanor statute, section 1–13–709, knowingly to vote in any election precinct in which one is not qualified to vote. No person is permitted to vote without being registered. § 1–2–201(1), 1B C.R.S. (1980). In order to be qualified to register to vote, a person must have resided in the precinct for thirty-two days immediately preceding the election. § 1–2–101, 1B C.R.S. (1980).[1] Upon applying for voter registration, one must provide accurate information regarding his residence. § 1–2–203(1)(a), (2)(b), (3)(a), (3)(b), 1B C.R.S. (1980); § 1–2–203(2)(b), 1B C.R.S. (1986 Supp.); § 1–2–204(1), (2), 1B C.R.S. (1980). The voter must also provide accurate information about his residence on his voter's signature card, which must be presented at the precinct polling place. § 1–7–107(1)(a), 1B C.R.S. (1980). Under this statutory scheme, one can vote in an election precinct where he is not qualified only if he gives false information about his place of residence either when he registers or when he votes.

If a person votes by providing false information regarding his current residence, in violation of section 1–2–225, he necessarily votes in an election precinct in which he is not qualified to vote, in violation of section 1–13–709. As applied to the four felony counts in the present case, precisely the same conduct violates both the felony and the misdemeanor statutes. Because the two statutes proscribe the same conduct but impose different penalties, the felony statute as applied to the conduct charged in this case is not consistent with the requirement of equal protection of the laws as guaranteed by the fourteenth amendment to the United States Constitution and by the due process clause of article II, section 25, of the Colorado Constitution. *See, e.g., People v. Oliver*, 745 P.2d 222, 227 (Colo. 1987); *People v. Mozee*, 723 P.2d 117, 126 (Colo.1986).

The majority, however, claims to discover a distinction between the conduct pro-

scribed by the two statutes as applied in this case because "[w]hen the defendant registered to vote and provided false information, he violated an element of the felony statute, but not an element of the misdemeanor." Majority op. at 538. The purported distinction is illusory. Neither the felony nor the misdemeanor is complete until a vote has been cast. Under the statutory scheme previously outlined, one cannot vote in a precinct where he is not qualified by residence to cast his ballot, in violation of the misdemeanor statute, unless he provides false information concerning his residence either at the time he registers or at the time he votes. Although not formally an element of the misdemeanor statute (section 1–13–709), providing false information about current residence at one time or the other is essential in order to enable a person to vote in an election precinct where he is not qualified. Viewed against the statutory background, the supposed distinction evaporates.

This is not a case like *People v. Czajkowski*, 193 Colo. 352, 568 P.2d 23 (1977), in which we held that the legislature could prescribe more severe penalties for theft of automobile parts than for other types of theft. There, the additional requirement that the subject of the theft be automobile parts distinguished the two statutes, and we also observed that "[s]imply because an act may violate more than one statutory provision does not invalidate the legislation in question, so long as the legislative classification is not arbitrary or unreasonable, and the differences in the provisions bear a reasonable relationship to the persons included and the public policy to be achieved." *People v. Czajkowski*, 193 Colo. at 356, 568 P.2d at 25. Unlike *Czajkowski*, where the statutes distinguished between two types of theft, the statutes as applied here proscribe identical conduct: voting by providing false information about one's residence.

It is true that the reach of the misdemeanor statute is more extensive than that

---

1. A properly registered voter who moves from the precinct where registered within thirty-two days prior to the election is permitted to vote in the precinct where registered. § 1–2–101(2), 1B C.R.S. (1980).

of the felony statute. Specifically, the misdemeanor statute, section 1–13–709, can be violated by one who knowingly votes even though not qualified to do so because he is underage or not a citizen of the United States, or by a knowing offer to vote in an election precinct in which the voter is not qualified to vote. The felony statute, section 1–2–225, does not extend to such conduct. In order for an equal protection violation to exist, however, it is not necessary that each statute proscribe identical conduct in all the possible applications of each statute; it is sufficient that with respect to the conduct charged, both of the statutes apply and prescribe disparate penalties. *People v. Bramlett*, 194 Colo. 205, 210, 573 P.2d 94, 97 (1977), *cert. denied*, 435 U.S. 956, 98 S.Ct. 1590, 55 L.Ed.2d 808 (1978).

The People suggest that the statutes do not proscribe identical conduct because a person could elude precinct monitors and vote without providing false information about his place of present residence, thereby violating section 1–13–709, but not section 1–2–225. I do not believe that equal protection determinations should turn on such imaginative hypothetical possibilities. There is nothing in the record to suggest that such unusual facts are present here. As we said in *People v. Calvaresi*, 188 Colo. 277, 281–82, 534 P.2d 316, 318 (1975), in order to satisfy equal protection requirements, "[t]here must be substantial differences having a reasonable relationship to the persons involved and the public purpose to be achieved." No such differences exist as the two statutes are applied in this case.

I would affirm the dismissal of the four counts of violation of section 1–2–225.

I am authorized to say that ROVIRA and KIRSHBAUM, JJ., join in this concurrence and disssent.