The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Troy Roger CAGLE, Defendant–Appellant.

No. 86SA169.

Supreme Court of Colorado, En Banc.

Feb. 8, 1988.

Rehearing Denied March 7, 1988.

Appeal Dismissed May 31, 1988. See 108 S.Ct. 2009.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cynthia Savage, John Milton Hutchins, Clement Engle, Asst. Attys. Gen., Denver, for plaintiff-appellee.

Dixon and Snow, Steven Janiszewski, Frank Martinez, Denver, for defendant-appellant.

ERICKSON, Justice.

Defendant Troy Roger Cagle was charged with possession of a controlled substance in violation of section 18–18–105, 8 C.R.S. (1983 Supp.), and driving under denial in violation of section 42–2–130, 17 C.R.S. (1983 Supp.). The prosecution appealed a ruling of the Arapahoe County District Court suppressing the defendant's statement to police officers and evidence seized from the defendant's automobile. After reviewing the interlocutory appeal, *People v. Cagle*, 688 P.2d 718 (Colo.1984), we vacated the ruling of the district court and remanded for additional findings of fact. On remand, the district court conducted a second suppression hearing, and denied the motion to suppress after making additional findings of fact and conclusions of law. The defendant was tried by a jury and was convicted on both counts. He then appealed to the court of appeals asserting: (1) the district court erred in admitting the evidence found in defendant's car and in admitting the defendant's statements; (2) section 18–18–105, 8 C.R.S. (1983 Supp.) violates the equal protection clause of the United States and Colorado Constitutions; (3) the trial court imposed an inappropriate sentence; (4) the jury was improperly instructed; and (5) Cagle was denied effective assistance of counsel. In accordance with section 13–4–110, 6 C.R.S. (1973), the defendant filed a motion requesting determination of jurisdiction, and transfer of the appeal to this court. Because the defendant is challenging the constitutionality of a statute, we accepted jurisdiction. We now affirm.

I.

On June 19, 1983, Greenwood Village Police Officer Patrick Cillo, on patrol in his police car, began following the defendant's automobile because he believed that its presence in the area was suspicious. After observing the defendant change lanes without signaling, Officer Cillo turned on his overhead lights to signal the defendant to stop. The officer then saw the defendant's passenger bend down in his seat and remain in that position until just before the defendant turned a corner and pulled over.

The defendant, who got out of his automobile and approached Officer Cillo, was unable to produce a driver's license and gave a false name.[1] The officer recognized the defendant and knew that he had falsely identified himself. Officer Cillo called for backup assistance and ordered the defendant's passenger out of the car. As the passenger opened the car door the officer noticed a bottle of scotch whiskey in the car. The officer testified that the defendant and his passenger were not twenty-one years of age or older.

The trial court found that after Officer Smith arrived, Officer Cillo checked under the passenger's seat in the defendant's car for weapons and discovered a shirt crammed under the seat. As he pulled the shirt out, a plastic bag containing mushrooms fell to the floor. After finding the mushrooms, Officer Cillo placed the defendant and the passenger under arrest. The officer then advised the defendant of his *Miranda* rights. After the *Miranda* warning was given, the defendant stated that the plastic bags contained hallucinogenic mushrooms.

After the defendant was charged with possession of psilocybin, a schedule I controlled substance, in violation of section 18–18–105, 8 C.R.S. (1983 Supp.), a motion was filed to suppress the evidence found in his car and his statement to Officer Cillo. The district court granted the motion, ruling that although the officer had probable cause to stop the defendant, he did not have a reasonable suspicion to search the defendant's car for a weapon, and held that the defendant's statement was the fruit of an illegal search.

In *People v. Cagle*, 688 P.2d 718 (Colo. 1984) (Cagle I), we stated that the validity of the stop and search of the defendant's car was governed by the standards enunciated in *People v. Tate*, 657 P.2d 955 (Colo. 1983) and *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Because we were not able to determine from

the record whether the officer's purpose in entering the vehicle was to make a protective search, we remanded the case for resolution of the second element of the *Tate* test: whether the purpose of the search was reasonable. On remand, the trial court conducted a second suppression hearing and denied the defendant's motion to suppress. The trial that followed was concluded with a jury verdict of guilty on both counts. The defendant's motion for judgment of acquittal notwithstanding the verdict and motion for a new trial were both denied. The trial court then sentenced the defendant to twelve years plus one year parole on count one, and six months on count two, to be served concurrently.

After obtaining new counsel, defendant filed a motion for reconsideration of sentence. In May 1985, the trial court placed Cagle on probation for twelve years. Probation was later revoked and the sentence was reinstated.

## II.

### A.

■ Defendant contends that the trial court erred in admitting evidence relating to the psilocybin mushrooms that were found in his car. The standards for determining the validity of a stop and search were set forth in *People v. Tate*, 657 P.2d 955 (Colo.1983):

> (1) there must be an articulable and specific basis in fact for suspecting that criminal activity has or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose.

*Id.* at 958. In *Cagle I,* we applied *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), and held that under the proper circumstances a weapons search accompanying an investigatory stop may be extended to the passenger compartment of an automobile.[2] In the context of auto-

---

**1.** The defendant, Troy Roger Cagle, gave the officer the name of his older brother, Bennie Cagle.

**2.** In *Long,* the United States Supreme Court concluded:

> that the search of the passenger compartment of an automobile, limited to those areas in

mobile searches, we in effect added a fourth requirement, in *Cagle I*, to the three enumerated in *Tate:* there must be a reasonable belief based on specific and articulable facts which reasonably cause the officer to believe that the suspect is dangerous and may gain immediate control of weapons.[3]

In applying the *Tate* test on remand, the trial court found that there was an articulable and specific basis in fact for suspecting that criminal activity had occurred because Officer Cillo observed the defendant changing lanes without using his turn signal and suspected the defendant of possessing an alcoholic beverage while under the age of twenty-one. We agree that the first prong of the *Tate* test was satisfied.

With respect to the second and third prongs of the *Tate* test, in *Cagle I*, "[w]e disagree[d] with the district court's conclusion concerning the scope and character of the search but remand[ed] ... for a determination as to the second requirement of *Tate:* whether the purpose of the *search* was reasonable." *Cagle I*, 688 P.2d at 721–22 (footnote omitted). Moreover, we disagreed with the district court's conclusion that the search of the defendant's vehicle violated the third prong of *Tate* in that there was "no indication or even reasonable suspicion that there would have been a weapon in the car." *Id.* at 721. In support of our conclusion that the third prong of *Tate* was met, we stated:

> Assuming that it can be shown on remand that Officer Cillo's purpose in conducting the search was in fact to look for weapons, we believe that the scope and character of the search accorded with such a purpose. The passenger's furtive

conduct in bending down in his seat after Officer Cillo turned on his overhead lights would have warranted a reasonable belief that the passenger had a weapon beneath his seat, thus justifying a weapons search in that area.

*Id.* at 723 (citation omitted).

On remand, the trial court made the following findings relating to the second and third requirements of *Tate:*

> [As the defendant pulled over,] the passenger in the car, who was later identified as Scott Suderman, made a furtive gesture of reaching below the seat or bending over as if to be secreting something.
>
> . . . .
>
> ... Officer Cillo used his hand-operated radio and called for assistance.... Officer Cillo then kept Mr. Cagle and Mr. Suderman at the rear of the car until Officer Rick Smith arrived....
>
> After Office Smith arrived, ... Cillo, remembering the gesture made by Mr. Suderman of reaching down after the overhead lights were turned on and being bent over for some period of time, and in order to protect his safety, then proceeded to search the Cagle automobile for any weapons.
>
> . . . .
>
> At this point at least two criminal activities had taken place. One was basically a quasi-criminal activity, the changing of lanes without indicating this intention; the other the possession of alcoholic beverages to [sic] someone under the age of 21.

The trial court's finding that Officer Cillo searched the automobile for weapons in

---

which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.
*Long*, 463 U.S. at 1049, 103 S.Ct. at 3481 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)) (footnote omitted).

**3.** The defendant claims that article II, section 7 of the Colorado Constitution, which is substan-

tially similar to the fourth amendment of the United States Constitution, should not be limited by *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Accordingly, the defendant urges us to reject the *Long* doctrine. In *Cagle I*, however, we stated: "The validity of the stop and search of the passenger compartment in this case is thus governed by the standards enunciated in *Tate* and *Long*." 688 P.2d at 721. Because our adoption of *Long* is the law of the case, we reject the defendant's claim. *See People v. Roybal*, 672 P.2d 1003 (Colo.1983).

order to protect himself, is a factual determination of the officer's actual purpose in making the search. We will not disturb a trial court's findings of fact where they are supported by the record. *Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo. 1986).

According to *Cagle I,* the second area of inquiry is whether the purpose is reasonable. Officer Cillo called a backup to the scene in order to protect his personal safety, and waited for the backup to arrive before searching the car. At the time of the search, Officer Cillo informed Officer Smith of the passenger's suspicious movements, and testified at both suppression hearings that the purpose of his search was to find weapons.[4] Officer Smith conducted a pat down search of the defendant, while Officer Cillo searched the car. Under the circumstances, we conclude that the purpose of Officer Cillo's search was reasonable. Because the record supports the trial court's finding that Officer Cillo's purpose in conducting the search was in fact to look for weapons, we reiterate our conclusion in *Cagle I* that the third requirement was met because "the scope and character of the search accorded with such a purpose." *Cagle I,* 688 P.2d at 723.

With respect to the fourth requirement that the officer reasonably believes the suspect is dangerous and may gain immediate control of weapons, Officer Cillo testified at the second suppression hearing that he called a backup because the defendant had given him a false name which led him to believe that something was amiss. Cillo testified that he then asked the passenger

to get out of the car in case he had a weapon. Cillo then waited until his backup arrived before he searched the car. While it is true that based upon past experience, Officer Cillo was familiar with the defendant and had no reason to believe he was dangerous, this was not the case with Suderman, the passenger. Since it was Suderman who made the furtive gesture, it was reasonable for Cillo to believe that Suderman was dangerous and could gain immediate control of a weapon. Accordingly, we conclude that the search conducted by Officer Cillo satisfies the test enumerated in *Cagle I.*

### B.

■ The defendant also argues that his statements to police officers following the search should be suppressed as fruit of the poisonous tree. We agree with the trial court's finding that the defendant was properly advised of his constitutional rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that he freely and voluntarily waived those rights. Because the defendant's statements were voluntarily made without coercion, force, promise or threat on the part of Officer Cillo or any other police officer, we conclude that the statements are admissible as against the defendant.

### III.

The defendant claims that section 18–18–105, 8 C.R.S. (1983 Supp.), prohibiting one from possessing a schedule I controlled substance, is unconstitutional because it carries a greater penalty than the statute

---

**4.** Officer Cillo's testimony at both suppression hearings supports the view that the purpose of his search was to find weapons. At the first suppression hearing Officer Cillo's testimony included the following dialogue:

Q: What did it appear to you as a police officer that [the defendant] was doing?
A: To me it was either putting something under or taking something out of the seat.
Q: When you observed this what went through your mind as a trained police officer?
A: My personal safety was first in my mind.
Q: Why do you say that?
A: Due to the many occasions where ... police officers [get] shot [or] killed, or just from [my] experience....

Q: What went through your mind as far as what was being taken out or put under the seat of the car?
A: I thought it was probably some kind of weapon.
At the second suppression hearing, Officer Cillo again testified that he searched the defendant's vehicle in order to protect himself. Cillo's testimony was corroborated by that of Officer Smith who testified that he was present at the time of the search; that Cillo had told him about the suspicious movement of the passenger; and that he conducted a pat down of the defendant while Cillo was searching the car.

involving felony use of a schedule I controlled substance, section 18–18–104, 8 C.R.S. (1983 Supp.).

## A.

■ The prosecution maintains that the defendant failed to properly preserve the issue for review. We disagree. The defendant raised the issue of the constitutionality of section 18–18–105, 8 C.R.S. (1983 Supp.), on March 28, 1985, after oral argument on his written motion for judgment of acquittal or for new trial, but immediately preceding sentencing. Crim.P. 12(b) provides in part: "When a motion challenging the constitutionality of the statute upon which the charge is based or asserting lack of jurisdiction is made after the commencement of the trial, the court shall reserve its ruling until the conclusion of the trial." Here, the defendant made his motion challenging the constitutionality of section 18–18–105 after the trial but before sentencing. The trial court found that the "motions are deemed timely filed for all purposes." It is axiomatic that this court will not consider constitutional issues raised for the first time on appeal, *Colgan v. Department of Revenue*, 623 P.2d 871 (Colo.1981), *Manka v. Martin*, 200 Colo. 260, 614 P.2d 875 (1980), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981). However, when an issue concerning the constitutionality of a statute under which the defendant has been convicted is raised prior to sentencing, we will not deny the defendant the right to appeal. In our view, the defendant properly preserved his constitutional challenge of section 18–18–105.

## B.

■ Equal protection of the laws is guaranteed by the fourteenth amendment to the United States Constitution and by the due process clause in article II, section 25 of the Colorado Constitution. *People v. Oliver*, 745 P.2d 222 (Colo.1987). Equal protection of the laws requires that those who are similarly situated will be afforded similar treatment. *People v. Mozee*, 723 P.2d 117, 126 (Colo.1986); *People v. Calvaresi*, 188 Colo. 277, 281, 534 P.2d 316, 318 (1975). "When two criminal statutes prescribe different penalties for identical conduct, a defendant convicted and sentenced under the harsher statute is denied equal protection of the laws." *Oliver*, 745 P.2d at 227 (quoting *Mozee*, 723 P.2d at 126). If, however, there are reasonable differences or distinctions between the statutes, equal protection is not offended. *People v. Westrum*, 624 P.2d 1302, 1303 (Colo.1981).

The fact that criminal conduct may violate more than one statutory provision, does not render such legislation constitutionally infirm. *People v. Romero*, 746 P.2d 534, 536 (Colo.1987); *People v. Taggart*, 621 P.2d 1375 (Colo.1981). Equal protection of the laws, however, requires statutory classifications of crimes to be "based on differences that are real in fact and reasonably related to the general purposes of criminal legislation." *Romero*, at 537 (quoting *People v. Mumaugh*, 644 P.2d 299, 301 (Colo.1982)).

Section 18–18–105(1)(a), 8 C.R.S. (1983 Supp.), provides:

> Except as authorized by part 3 of article 22 of title 12, C.R.S., it is unlawful for any person knowingly or intentionally to manufacture, dispense, sell, or distribute, with or without remuneration, *to possess* or to possess with intent to manufacture, dispense, sell, or distribute, with or without remuneration, a controlled substance; or to induce, attempt to induce, or conspire with one or more other persons to manufacture, dispense, sell, or distribute, with or without remuneration, or to possess with intent to manufacture, dispense, sell, or distribute with or without remuneration, a controlled substance.

(Emphasis added.) In the case of a schedule I controlled substance, violation of this statute is a class 3 felony. § 18–18–105(2)(a)(I). On the other hand, any person who *uses* a schedule I controlled substance commits a class 5 felony. § 18–18–104(1)(a), 8 C.R.S. (1983). The defendant argues that the possession of a controlled substance is indistinguishable from use of a controlled substance, but because possession is punished more severely than use, section 18–18–105 violates the equal protection clause. We disagree.

In determining whether there is a reasonable distinction which justifies imposing

harsher sentences for possession of a schedule I controlled substance than for use, we must determine whether the statutory classification is based on differences that are in fact real. In construing a statute, words and phrases should be given effect according to their plain and obvious meaning. *People v. District Court,* 713 P.2d 918 (Colo.1986). Possession of a controlled substance does not necessarily involve use. If a person is holding a plastic bag containing a psilocybin mushroom, he possesses a schedule I controlled substance. He does not use it until he ingests the mushroom. To use the mushroom, he must first possess it.[5] Once he uses the mushroom, he no longer possesses it.[6] Use and possession are therefore not identical acts. "An individual may illegally possess narcotics without being an addict [user], and an individual may be addicted [a user] and subject to legal sanctions without being in possession of narcotics at the same point in time." *People v. McKenzie,* 169 Colo. 521, 529, 458 P.2d 232, 235 (1969) (quoting *Casias v. People,* 160 Colo. 152, 157, 415 P.2d 344, 346, *cert. denied,* 385 U.S. 979, 87 S.Ct. 523, 17 L.Ed.2d 441 (1966)).

The prosecution contends that penalizing possession more harshly than use is justified because so long as one has possession of a controlled substance, he has the capability to distribute or dispense it. We agree with the prosecution's contention. In *People v. McKenzie,* 169 Colo. 521, 458 P.2d 232 (1969), we upheld the General Assembly's disparate treatment of the use and possession of marijuana under the Colorado Narcotic Drug Act. There, we discussed the difficulty in enforcing laws and in proving illegal transfers of drugs, stating that "[t]he proscription of possession, without more, facilitates the enforcement of the law against traffickers by eliminating the burden of proving a transfer." *Id.* at 527, 458 P.2d at 234 (quoting *State v. Reed,* 34 N.J. 554, 170 A.2d 419 (1961)).[7] The same policy consideration justifies placing possession of a controlled substance in the same category as possession "with intent to manufacture, dispense, sell, or distribute." § 18-18-105(1)(a).

The legislative purpose of article 18 of title 18 is set forth in section 18-18-101, 8 C.R.S. (1983 Supp.): "The general assembly hereby finds, determines, and declares that the strict control of controlled substances in this state is necessary for the immediate and future preservation of the public peace, health, and safety." We are not convinced that the General Assembly's disparate treatment of use and possession is not reasonably related to the purpose of strictly controlling controlled substances. Once a person uses a controlled substance, he primarily threatens only his own health and well-being. One who possesses controlled substances poses a greater threat to the "preservation of public peace, health and safety," which justifies the state's exercising greater control over him by imposing a more severe sanction.

The defendant claims that when the statutes contained in article 18 are read and

---

5. While it is possible for one to use a controlled substance without possessing it, *e.g.,* when another person places a mushroom into the user's mouth, we do not think this rises to the level of a distinction that can be fairly considered "real in fact."

6. We noted in *People v. McKenzie,* 169 Colo. 521, 528, 458 P.2d 232, 235 (1969), that "the containment of a consumed narcotic within a person's blood or respiratory system is not constructive possession."

7. The defendant argues that *McKenzie* is distinguishable from this case because it interpreted the Colorado Narcotic Drugs Act, C.R.S. 1963, 48-5-1 to 48-5-21 which was repealed and replaced in 1981 by sections 18-18-101 to 18-18-109, 8 C.R.S. (1981). *See* 1981 Colo.Sess. Laws

707. Under that statutory scheme unlawful use of marijuana constituted a misdemeanor; unlawful possession, a felony; and possession with the intent to induce or aid another to unlawfully use or possess, a felony with a more severe penalty. While the current statutory scheme treats possession with intent to manufacture, dispense, sell or distribute and possession identically, this does not detract from the distinction made in *McKenzie* between use and possession.

The defendant further argues that *McKenzie* is inapposite because *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), upon which *McKenzie* was based, was rejected by this court. We disagree. We rely upon *McKenzie* because its distinction between use and possession satisfies our present equal protection test, as well as the test required by *Blockburger.*

construed together, simple possession is indistinguishable from use. The defendant argues that section 18–18–106(3)(a)(II), which states that "[o]pen and public display, consumption, or use ... shall be deemed possession," indicates that the legislature intended to treat use and possession synonymously throughout article 18. "In construing different statutory provisions addressing the same topic, this court must make every effort to give full effect to the legislative purpose of all such provisions." *Senior Corp. v. Board of Assessment Appeals*, 702 P.2d 732, 742 (Colo. 1985). In our view, the General Assembly reasonably determined that because controlled substances pose a greater danger to the public than marijuana, the possession and use of controlled substances should receive disparate treatment. Because the General Assembly may prescribe more severe penalties for acts it perceives to have graver consequences, *Romero*, 746 P.2d 534, 537 (Colo.1987), *People v. Mozee*, 723 P.2d 117 (Colo.1986), we will not disturb the legislative classification in this case. In our view, section 18–18–105 does not violate equal protection of the laws.

The remaining issues raised by the defendant are without merit. Accordingly, the defendant's convictions are affirmed.