2015 COA 22

The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Ruby Lynn TRUJILLO, Defendant–
Appellant.

Court of Appeals No. 11CA1660

Colorado Court of Appeals,
Div. VII.

Announced March 12, 2015

Cynthia H. Coffman, Attorney General, Jacob R. Lofgren, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Rachel C. Funez, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE LICHTENSTEIN

¶ 1 Defendant, Ruby Lynn Trujillo, appeals the judgment of conviction entered on a jury verdict finding her guilty of identity theft and theft of less than $500 from an at-risk adult. We affirm.

## I. Background

¶ 2 Trujillo worked at an assisted living facility and, one weekend, took $250 in cash and a debit card from a resident. Trujillo used the debit card to spend approximately $270 at several stores. Trujillo claimed that the resident had given her permission to make these purchases, but denied taking any cash from the resident. The resident claimed that she had not given Trujillo cash or the debit card.

¶ 3 Trujillo was initially charged with identity theft, theft from an at-risk adult, and unauthorized use of a financial transaction device. The charge for unauthorized use of a financial transaction device was dismissed. And, before trial, Trujillo moved to dismiss the identity theft charge, arguing that, as applied to her, it violated her right to equal protection because the identity theft statute punished the same conduct as the unauthorized use of a financial transaction device statute, but carried a harsher penalty. The trial court denied the motion.

¶ 4 After Trujillo was convicted, the trial court sentenced her to three years of probation and ninety hours of community service.

¶ 5 On appeal, Trujillo contends that (1) the trial court abused its discretion when it admitted the resident's testimony that she never gave her debit card to anyone, and (2) her conviction for identity theft violates her right to equal protection of the laws.

¶ 6 We address and reject each contention in turn.

## II. Resident's Testimony

¶ 7 Trujillo contends that the trial court abused its discretion when it admitted the resident's testimony that she never gave her debit card to anyone. Trujillo contends that

this testimony constituted inadmissible character evidence. We are not persuaded.

### A. Standard of Review and Applicable Law

■ ¶ 8 We review a trial court's ruling on the admissibility and relevance of evidence for an abuse of discretion, and will only reverse the ruling if it was manifestly arbitrary, unreasonable, or unfair. *People v. Arzabala,* 2012 COA 99, ¶ 83, 317 P.3d 1196; *see People v. Ibarra,* 849 P.2d 33, 38 (Colo. 1993). Moreover, where, as here, the defendant did not object to the admission of the evidence, we review for plain error. *Arzabala,* ¶ 83; *see People v. Greenlee,* 200 P.3d 363, 366 (Colo.2009). Plain error is error that is both obvious and substantial. *Hagos v. People,* 2012 CO 63, ¶ 41, 288 P.3d 116; *People v. Ujaama,* 2012 COA 36, ¶¶ 42–43, 302 P.3d 296.

¶ 9 To be admissible, evidence must be relevant. CRE 401. Evidence is relevant where it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.; accord Greenlee,* 200 P.3d at 366.

¶ 10 One type of admissible evidence is habit evidence, which is relevant to prove that the conduct of a person on a particular occasion was in conformity with the habit. *See* CRE 406; *People v. T.R.,* 860 P.2d 559, 562 (Colo.App.1993). A habit "denotes one's regular response to a repeated situation" and "is the person's regular practice of responding to a particular kind of situation with a specific type of conduct." 2 Kenneth S. Broun, *McCormick on Evidence* § 195, at 1080–81 (7th ed.2013); *see T.R.,* 860 P.2d at 562.

■ ¶ 11 Character evidence, however, is not admissible for the purpose of proving that a person acted in conformity with his or her character on a particular occasion. CRE 404(a); *see People v. Ayala,* 919 P.2d 830, 832 (Colo.App.1995). "Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peace-

fulness, that usually is regarded as meriting approval or disapproval." *McCormick on Evidence* § 195, at 1080; *see T.R.,* 860 P.2d at 562.

### B. Analysis

■ ¶ 12 Trujillo contends that the following testimony from the resident constituted inadmissible character evidence:

> [Prosecutor]: Now, did you ever offer Ruby Trujillo to pay money for expenses for the tournament?
>
> [Resident]: No.
>
> Q. What about giving her your debit card to pay for expenses?
>
> A. No. Nobody uses my debit card.
>
> . . . .
>
> Q. Okay. What about T-shirts? Did you ask Ruby Trujillo to buy you T-shirts with your debit card?
>
> A. No.
>
> Q. Okay.
>
> A. She would have had to have it with her to buy the T-shirt. And I never gave ... my card to anybody; not my grandson, who lived with me or my niece who took me everywhere, even to the bank.
>
> . . . .
>
> Q. That's the first time you realized that the debit card was missing?
>
> A. Yes.
>
> Q. And did you report the theft to some staff members at [the assisted living facility] after that?
>
> A. Yes. I reported it to them before I did to the bank, because I knew [my niece] wasn't going to fib for me about it. She had no reason to.... And that's the first time I know of that she ever touched my debit card, her or anybody else.
>
> Q. What do you mean by that?
>
> A. Well, because I just didn't let anybody use it.
>
> . . . .
>
> Q. Do you think it's possible that you're just mistaken or you don't remember correctly that you gave it to Ruby Trujillo?

A. I don't know why I would. I never gave it to my niece and my grandson or to my grandson's friend that lives with us.

Q. Okay. And—

A. And they did all my shopping for me.

. . . .

A. When I needed them to do some shopping for me, I'd go to the bank and get the cash and give them cash for the groceries.

Q. Okay. And you never gave any cash to Ruby Trujillo.

A. I never gave anybody my credit card.

Trujillo contends that this testimony constituted character evidence because it "was only relevant to show that [the resident] is a person who is generally careful and guarded with her debit card, and it was offered to prove that she acted in conformity with her character in the charged incident and did not loan out her debit card to Ms. Trujillo."

¶ 13 Yet, while it is possible to infer from this testimony that the resident had a careful and guarded character with respect to her debit card, the prosecution did not offer the testimony as character evidence. The prosecution did not elicit, and the resident did not give, a generalized description of her disposition or a general trait, such as carefulness or guardedness. Instead, the resident described her regular response to the situation of needing people to buy things for her—her habit was to never give them her debit card. Thus, we conclude that this testimony was habit evidence, not character evidence, and that the trial court did not abuse its discretion in admitting it. *See T.R.*, 860 P.2d at 562; *McCormick on Evidence* § 195, at 1080–81.

## III. Equal Protection

¶ 14 Trujillo next contends that her conviction for identity theft violates her right to equal protection of the laws because, as applied to her, the identity theft statute punishes the same conduct as the unauthorized use of a financial transaction device statute, but carries a harsher penalty. We disagree that the statutes violate the equal protection guarantee as applied to her.

### A. Standard of Review

¶ 15 We review the constitutionality of a statute, as applied to a defendant, de novo. *People v. Lovato*, 2014 COA 113, ¶ 12, 357 P.3d 212; *People v. Perez–Hernandez*, 2013 COA 160, ¶ 10, 348 P.3d 451. Because we presume that statutes are constitutional, to succeed on an as-applied challenge, a defendant must establish the unconstitutionality of a statute, as applied to him or her, beyond a reasonable doubt. *Lovato*, ¶ 12.

### B. Applicable Law

¶ 16 It is the prerogative of the General Assembly to establish the penalties for particular criminal offenses. *Smith v. People*, 852 P.2d 420, 421 (Colo.1993); *People v. Montoya*, 196 Colo. 111, 113, 582 P.2d 673, 675 (1978). Legislative enactments, however, are always subject to constitutional constraints. *Smith*, 852 P.2d at 421.

¶ 17 One constraint is that equal protection of the law is guaranteed by the United States Constitution and by the Due Process Clause of the Colorado Constitution. U.S. Const. amend. XIV; Colo. Const. art. II, § 25; *see People v. Stewart*, 55 P.3d 107, 114 (Colo.2002). The equal protection guarantee "require[s] like treatment of persons who are similarly situated." *People v. Young*, 859 P.2d 814, 816 (Colo.1993).

¶ 18 Under the Colorado Constitution, a defendant may bring an equal protection challenge where two or more statutes carry different penalties for identical conduct, and the defendant is convicted under the statute carrying the harsher penalty. *Stewart*, 55 P.3d at 114; *Young*, 859 P.2d at 816 ("[I]t is only when the *same conduct* is proscribed in two statutes, and *different criminal sanctions* apply, that problems arise under equal protection." (internal quotation marks omitted)).

¶ 19 The statutory classification of crimes must be based on differences that are both real in fact and reasonably related to the general purposes of the criminal legislation. *Stewart*, 55 P.3d at 114. Thus, the legislature may "establish more severe penalties for acts that it believes have graver consequences, even if the differences are only

a matter of degree." *People v. Mozee,* 723 P.2d 117, 126 (Colo.1986). And, statutory classifications need not be perfect. *See Ferguson v. People,* 824 P.2d 803, 810 (Colo. 1992); *see also Passarelli v. Schoettler,* 742 P.2d 867, 870 (Colo.1987).

¶ 20 This challenge may be brought facially or as-applied. *See People v. Onesimo Romero,* 746 P.2d 534, 536–38 (Colo.1987). Generally, a facial challenge "alleges that there are no circumstances to which a statute can be applied constitutionally." *People v. Gardner,* 250 P.3d 1262, 1268–69 (Colo.App. 2010) (internal quotation marks omitted). In contrast, "[a]n as-applied challenge alleges that the statute is unconstitutional as to the specific circumstances under which a defendant acted." *Id.* at 1268 (internal quotation marks omitted); *accord Qwest Servs. Corp. v. Blood,* 252 P.3d 1071, 1085 (Colo.2011); *People v. Ford,* 232 P.3d 260, 263 (Colo.App.

2009); *Sanger v. Dennis,* 148 P.3d 404, 410 (Colo.App.2006).

¶ 21 Trujillo raises only an as-applied challenge to the identity theft statute. Accordingly, we consider whether—under the specific circumstances under which Trujillo acted—the relevant statutes, or specific subsections of the statutes, punish identical conduct, and whether a reasonable distinction can be drawn between the conduct punished by the two statutes. *See Onesimo Romero,* 746 P.2d at 538–39 (examining the conduct of the defendant that formed the basis of the counts in an as-applied equal protection challenge).

¶ 22 In this case, Trujillo's charged conduct was using the resident's debit card, without her permission, to purchase food, clothing, and other items.

¶ 23 The two statutes provide, in pertinent part, as follows:

| | |
|---|---|
| (1) A person commits identity theft if he or she:<br><br>(a) <u>Knowingly uses</u> the personal identifying information, financial identifying information, or <u>financial device of another without permission</u> or lawful authority <u>with the intent to obtain cash, credit, property, services,</u> or any other thing of value or to make a financial payment[.]<br><br>§ 18-5-902(1)(a), C.R.S. 2014 (emphasis added). | (1) A person commits unauthorized use of a <u>financial transaction device</u> if he uses such device for <u>the purpose of obtaining cash, credit, property, or services</u> or for making financial payment, <u>with intent to defraud,</u> and <u>with notice</u> that either:<br><br>. . . .<br><br>(b) For any reason his use of the financial transaction device is <u>unauthorized</u> either by the issuer thereof or <u>by the account holder.</u><br><br>§ 18-5-702(1)(b), C.R.S. 2014 (emphasis added). |

¶ 24 Identity theft is a class 4 felony, with a presumptive range of two to six years imprisonment. §§ 18–1.3–401(1)(a)(V)(A), 18–5902(2), C.R.S.2014. Unauthorized use of a financial transaction device is a class 1 mis-demeanor where the property obtained is worth less than $1000, with a presumptive range of six to eighteen months in jail. §§ 18–1.3–501(1)(a), 18–5–702(3)(b), C.R.S. 2014.

## C. Analysis

¶ 25 Trujillo contends that the identity theft statute is unconstitutional as applied to her because it prohibits identical criminal conduct as the unauthorized use of a financial transaction device statute, but imposes a harsher penalty for that conduct. We are not persuaded that the statutes are unconstitutional as applied to her.

¶ 26 We note initially that the identity theft and the unauthorized use of a financial transaction device statutes have several similarities. Each statute requires proof of use of a "financial device" or a "financial transaction device," both of which include debit cards. See §§ 18–5–702(1)(b), 18–5–902(1)(a); see also § 18–5–901(6)(a); § 18–5–701(3), C.R.S.2014. The use must be unauthorized or without permission. See *Royal Indem. Co. v. Markley*, 116 Colo. 84, 87, 178 P.2d 672, 673 (1947) (recognizing that one definition of permission is authorization); *People v. Pipkin*, 762 P.2d 736, 737 (Colo. App.1988). And, the perpetrator's use of the debit card must be intended to obtain, or for the purpose of obtaining, cash, among other things. See §§ 18–5–702(1)(b), 18–5–902(1)(a).

¶ 27 Another division of this court concluded that, even with these similarities, the statutes do not punish identical conduct because the felony identity theft statute requires the prosecution to prove an element—that the device belonged to another—that the misdemeanor unauthorized use of a financial transaction device statute does not require. Rather, in the case of the misdemeanor statute, the device may belong to the perpetrator. See *People v. Jauch*, 2013 COA 127, ¶¶ 13–14, —— P.3d ——.

¶ 28 We agree that the statutes are not unconstitutional as applied to Trujillo, but we reach this conclusion for a reason different from that stated in *Jauch*. We conclude that a reasonable distinction can be drawn between the conduct punished by the two statutes, because—as explained below—the felony identify theft statute describes a theft perpetrated against the account holder of a financial device, while the misdemeanor statute describes fraudulent conduct committed against the provider of cash, property, or services in a financial transaction.

¶ 29 The identity theft statute, as pertinent here, proscribes the knowing use of another person's debit card with intent to obtain cash or other items, without that person's permission. As applied here, the victim of identity theft is the account holder whose identity was used (and hence financial obligation incurred) to pay for such items of value. Thus, the identity theft statute demonstrates the legislature's intent to protect such persons from the risk of suffering a financial obligation which they did not personally incur. See *People v. Reed*, 2013 COA 113, ¶ 60, 338 P.3d 364 (noting that this statutory scheme is intended to prevent the theft of a person's financial or personal information).

¶ 30 In contrast, the unauthorized use of a financial transaction device statute is intended to prevent fraud in financial transactions. It proscribes the unauthorized use of the device with the intent to defraud for the purpose of obtaining cash, credit, property, or services from that provider. Thus, the victim this statute seeks to protect is the deceived provider of the cash, property, or services. See *People v. Novitskiy*, 81 P.3d 1070, 1073 (Colo.App.2003) (unauthorized use of a financial transaction device statute imposes criminal penalty where a defendant in fact obtains the things of value from the provider of those things, and does not merely use the financial transaction device to attempt to obtain them).

¶ 31 Thus, the differences between the two statutes are "reasonably related to the legislature's purposes of protecting" different victims against a different type of harm. See *Onesimo Romero*, 746 P.2d at 537–38; *Lovato*, ¶ 38 (concluding that there was no as-applied equal protection violation because the sexual assault on a child statute and the child abuse statute were intended to protect children from different categories of harm).

¶ 32 We are mindful that, as noted by Trujillo, the felony offense describes the mental state as knowingly (with the intent to obtain cash, among other things), whereas the misdemeanor offense requires a more culpable mental state of an intent to defraud (for the purpose of obtaining cash, among

other things). Nonetheless, the legislature may "establish more severe penalties for acts that it believes have graver consequences," *Mozee,* 723 P.2d at 126, such as the theft of a person's identity through the theft of his or her debit card. The legislature could have reasonably concluded that the consequences of victimizing a private citizen by stealing his or her identity warrant a greater penalty than defrauding a business. *See id.*

¶ 33 We therefore conclude that Trujillo's equal protection rights were not violated because the identity theft statute targets acts having graver consequences than the acts proscribed by the unauthorized use of a financial transaction device statute. Although the classifications are not perfect, the legislature could rationally perceive identity theft to have a greater degree of reprehensibility. *See Ferguson,* 824 P.2d at 810; *Passarelli,* 742 P.2d at 870.

¶ 34 The judgment of conviction is affirmed.

JUDGE FURMAN and JUDGE TERRY concur.